1842.

Irving
v.
De Kay.

---

IRVING and others, executors, &c. *vs.* DE KAY and others.

Where the testator, by his will, made in 1831, expressed his desire that his estate should not be divided until February, 1840, and directed that his wife should from time to time receive such sums out of the estate as she should request, previous to the division of the estate, to enable her to maintain the testator's family; and in case of her death before the division of the estate, he directed his executors to devote so much money to maintain the family as they should consider best; and he further directed such executors to sell so much of his real estate from time to time as they should judge necessary or prudent; and to borrow money upon mortgages of the estate; and the testator further directed a division of the estate to be made on the first of February, 1840, and that all his estate and all the property which his children had derived from him, or had purchased with funds furnished by him, should be valued by appraisers to be appointed by his executors, and that the aggregate amount of such valuation should be divided into five equal parts, and that so much of the said aggregate estate

as should be equal in value to one of said five parts should go to each of his children and their respective heirs, including in the portions of each the property which each one had derived from or purchased with funds furnished by the testator; and he authorized his executors to distribute the estate in kind, or to sell the same and divide the proceeds thereof, as they should judge best; and the testator further directed that two specific sums should be set apart and invested, for the payment of an annuity to his mother, and a legacy to B. and her daughter, and the testator then devised all his estate to his executors in trust, to enable them to carry into effect the provisions and directions of the will; *Held*, that the bequests of the annuity and the legacy were valid, although the limitation over of the principal sum, to be invested for the payment of such annuity, was void; as the annuity could be separated from such principal sum, by taking so much of the estate as would be sufficient to purchase the annuity upon the principal of valuing life annuities.

*Held also*, that the trust to receive the rents and profits, after the death of the widow of the testator and previous to the division of the estate, and to apply so much thereof to the support of the surviving members of the family, as the executors should consider best, was void, as this rendered the trust estate, or so much thereof as was not necessary to be sold to pay debts and legacies, inalienable for a term in gross and not determinable at the expiration of not more than two lives in being at the death of the testator.

*Held also*, that although the trust to provide for the surviving members of the family, after the death of the widow of the testator, was illegal and void, yet as it was wholly disconnected from the trust to receive the rents, &c. and apply them to the support of the widow and such of the family as chose to live with her, which was necessarily limited to the life of the widow, such void trust did not render the trust estate invalid, in the hands of the trustees, during the life of the widow.

*Held further*, that the power to divide the estate in 1840, was a mere power in trust which did not require the continuance of the legal estate in the trustees to sustain it; and that if the power to sell at the end of an absolute term, not depending on lives in being at the death of the testator, would render the estate inalienable until February, 1840, that part of the power would alone be void, and could not prevent the execution of the residue of the power authorizing a division or partition of the property.

*Held also*, that the provisions of the will did not deprive the widow of the testator of her dower in the real estate of her husband, so as to require her to elect between such dower and the provision made for her by the will.

An estate which is inalienable for an absolute term, and which is not so limited as to be certainly determinable at the expiration of not more than two lives in being at the death of the testator, is void in its creation.

Any legal trust is sufficient to sustain a devise or conveyance to the trustee, of an estate commensurate with such trust, without reference to other illegal trusts which the testator or grantor has attempted to create in the same estate as distinct and separate trusts.

The intention of the testator, when ascertained from an examination of the

will in connection with the situation of his property, &c. at the time of making the will, must be carried into effect, so far as that intention is consistent with the rules of law.

Although some of the objects for which a trust is created, or some future interests limited upon the trust estate are illegal, or invalid, if any of the purposes of the trust are valid, the legal title vests in the trustees during the continuance of the valid objects of the trust, unless the legal and valid objects of the trust are so mixed up with those which are illegal and void that it is impossible to sustain the one without giving effect to the other.

Every disposition, by a testator, of an estate or interest in the rents, or income of his real or personal estate, which, if valid, would have the effect of rendering the property inalienable for a longer period than is allowed by law, and every remainder or other future estate or interest limited upon a trust which would have that effect, must be considered and treated as absolutely void and inoperative, in determining the question as to the validity of a devise of the legal estate to trustees, or the validity of any other provision of the will.

Where the legal purposes for which an express trust of real property was created cease, the estate of the trustees in the trust property also ceases.

Where an express trust is created which is not authorized by law, no estate vests in the trustees, but the trust, if directing or authorizing the performance of any act which may lawfully be performed under a power will be valid as a power in trust.

A trust to mortgage lands for the benefit of creditors at large whose debts are not a charge upon such lands is void, it not being one of the express trusts authorized by the revised statutes.

1842.

Irving
v.
De Kay.

THE original bill in this cause was filed in February, 1840, by the executors and executrix of H. Eckford, deceased, to obtain a construction of the will of the decedent, and the direction of the court as to the manner in which the complainants were to execute their trust in relation to the distribution of his estate among his devisees and legatees. And his heirs and next of kin, except one of the sons who had conveyed all his interest in the estate to his mother, the executrix, were made parties to the suit. Mrs. Eckford having afterwards died, the proceedings were continued by a bill of revivor and supplement. Henry Eckford died at Constantinople in November, 1832, having in June, 1831, executed his will in due form of law to pass real and personal estate ; leaving four children and one grand child his only heirs at law. By the will of Mr.

April 5.

Eckford, after expressing a desire that his estate should not be divided until February, 1840, but be improved and disencumbered as far as practicable or judicious, and that in the mean time such of his family as should wish to do so should continue to reside with his widow and be maintained respectably by his estate, he directed that his wife should from time to time receive such sums out of the estate as she should request, previous to the division of the estate, to enable her to maintain such family, without being accountable for the sums she should so receive. And in case of her death before the division of the estate, he directed his executors to take such measures and devote so much money to maintain and keep the family together as they or a majority of them should consider best. He further directed his executrix and executors to sell and convey so much of his estate from time to time as they or a majority of them should judge to be necessary or prudent, and to borrow money on the credit of the estate and secure the same by mortgage. But he requested them to sell the real estate on the east side of the city first, and that the residue of the estate in the city should be disencumbered and kept until his estate was divided. He then directed a division of his estate to be made on the first of February, 1840, all debts and charges against it being first paid and the monies to secure an annuity to his mother, and a legacy to Mrs. B. and her daughter, being first invested and deducted, in the following manner : " All my estate, and all the property which the husband of my daughter Janet J. E. De Kay has derived from and purchased with funds furnished by me, and which has not been received back by me, and all the real estate which my said grand daughter Janet Joseph Halleck Drake has inherited from her parents severally, or either of them, and which her said parents severally or jointly originally received or derived from me, shall be valued in one united valuation, to be made by appraisers to be appointed by my executrix and executors, or a majority of them, or of the survivors of them ; and the aggregate amount of such

united valuation shall be divided into five equal parts. And so much of the said aggregate estate as shall be equal in value to one of the said five parts shall go to each of my children, Janet, the wife of J. E. De Kay, Eliza, the wife of G. F. Irving, Joseph, and Henry, and their respective heirs, and the like portion shall go to my said grand daughter J. J. H. Drake and her heirs ; including, however, in the portion of my daughter Janet the property which her husband J. E. De Kay has derived from and purchased with funds furnished by me and which has not been received back by me, and in the portion of my said grand daughter all the real estate which she has inherited from her parents severally or either of them, and which her parents severally or jointly originally received or derived from me ; so that finally, including what sum of the said shares shall already have been derived from me and what remains to be distributed, my said four children and grand child, and their respective heirs, shall have received from me an equal share of property, one not more than another." The testator also authorized his executrix and executors to distribute the estate in kind, or to sell the same and divide the proceeds thereof as they or a majority of them should judge best. And after directing two specific sums to be set a part and invested as soon as convenient after his death, for the payment of an annuity to his mother and the legacy to Mrs. B. and her daughter, he concluded by devising all his estate to his executrix and executors and the survivors of them in trust to enable them to carry into effect the provisions, intentions, directions, and purposes of his will ; with power to execute deeds and instruments and to do every thing necessary to effectuate the intentions thereof; and appointing his wife executrix and the four surviving complainants his executors, and the guardians of the persons and estates of such of his children as were then infants and of his grand daughter J. J. H. Drake, now the wife of G. C. De Kay, one of the defendants in this suit.

The bill after setting out the will and the foregoing

facts, alleged among other things that Mrs. Eckford claimed the right of dower in the estate of her husband, that there were large outstanding claims against the estate, and several suits pending against the complainants, in favor of the United States, and others, for the purpose of enforcing those claims; that some of the heirs at law and next of kin of the decedent claimed and insisted that the provisions of the will were illegal and void ; that the complainants had sold and conveyed some parts of the real estate in which the widow had joined for the purpose of making a valid and perfect title to the purchasers thereof, under a written agreement with her co-executors that she should receive compensation for her dower therein, out of the funds of the estate, if she should be found to have been entitled to dower. The bill also set forth the several matters which were in controversy between the complainants in the case of *Eckford and others* v. *De Kay and wife and others*, as the same are stated in the report of that case in this court, (8 *Paige's Rep.* 89 ;) alleging that the complainants had appealed from the decision of the chancellor : and the complainants insisted that if the decree of the court should be confirmed by the court for the correction of errors, the value of the property in the neighborhood of Love Lane which was in controversy in that suit, should be estimated at its value in February, 1840, in ascertaining the distributive share or portion of the grand daughter in the estate of the testator, under his will.

*D. Lord & F. B. Cutting*, for the complainants.

*G. Wood & N. Dane Ellingwood*, for G. C. De Kay and wife.

THE CHANCELLOR. The first objection of G. C. DeKay and wife to the validity of the will is, that it suspends the power of alienation of the estate for a longer time than is authorized by the revised statutes. There is no question as to the validity of the bequests of the annuity to the

mother of the testator, and of the income of the $5000 to Mrs. B. for life and of the principal to her daughter ; as the will directs that part of the fund to be carved out of the estate and invested separately as soon as convenient after his death. It is true he contemplates the investment of the principal, which will be necessary to raise the annuity for his mother, to be retained until her death, and then to be divided in the same manner as the rest of the estate. But that can only affect the bequest over of the capital of the fund after the death of the annuitant ; which can at once be separated from the annuity, if the limitation over is too remote as to such capital of the fund, by taking so much of the testator's estate merely as will be sufficient to purchase the annuity, upon the principles of valuing life annuities.

It is very evident from the whole will taken together that the testator intended his executrix and executors should receive the rents and profits of the estate, or of so much thereof as should not be sold for the payment of debts &c., previous to the time appointed for the division of the property ; and an interest in those rents and profits is given to the widow and family for their support in the meantime. This would render the trust estate, or so much thereof as was not necessary to be sold to pay debts and legacies, inalienable for a term in gross not determinable upon lives, under the provisions of the 63d section of the article of the revised statutes relative to uses and trusts. (1 *R. S.* 730.) According to the decision of the court for the correction of errors in the case of *James' will,* such an inalienable estate for an absolute term, not determinable at the expiration of not more than two specified lives in being at the death of the testator, cannot be sustained. I consider it conclusively settled, however, by the decisions of the court of dernier resort confirming the decrees of this court in the cases of *Gott* v. *Cook,* (7 *Paige's Rep.* 521,) and of *Van Vechten* v. *Van Vechten,* (8 *Idem,* 104,) that any legal trust is sufficient to sustain a devise or conveyance to the trustee, of an estate commensurate with such trust ;

1842.

Irving
v.
De Kay.

without reference to the illegal trusts which the testator or grantor has attempted to create in the same estate. And since the decision, in December 1839, of the case of *Darling* v. *Rogers & Sagory*, (22 *Wend. Rep.* 483,) the court for the correction of errors has steadily adhered to and acted upon those cardinal and conservative principles, in the construction of devises and conveyances in trust, which were stated and intended to be acted upon by this court in the case of *Hawley* v. *James*, (5 *Paige's Rep.* 320, 458, 459 ;) but which the appellate court thought were misapplied here in relation to the trusts of Mr. James' will. The principles stated in that case, and which are now the settled rules of law, are, that the intention of the testator, when it shall have been ascertained from an examination of the will in connection with the situation of his property, &c. at the time of making such will, must be carried into effect by the courts, so far as that intention is consistent with the rules of law ; that although some of the objects for which a trust is created, or some future interests limited upon the trust estate, are illegal and invalid, if any of the purposes for which the trust was created are legal and valid and would have authorized the creation of such an estate, the legal title vests in the trustees during the continuance of such valid objects of the trust ; except in those cases where the legal and valid objects of the trust are so mixed up with those which are illegal and void, that it is impossible to sustain the one without giving effect to the other ; and that every disposition by the testator of an estate or interest in the rents, profits, or income of his real or personal property, and every trust in the will which if valid would have the effect of rendering the property inalienable for a longer period than is allowed by law, and every remainder or other future estate or other interest limited upon the trust which would have that effect, must be considered and treated as absolutely void and inoperative, in determining the question of the validity of a devise of the legal estate to trustees or the validity of any other provision of the will.

To apply these principles to the case under consideration : The revised statutes authorize the creation of a trust to sell lands for the benefit of creditors, or to sell, lease, or mortgage them for the benefit of legatees or to satisfy any charge thereon ; but not to mortgage them for the benefit of creditors at large. The power to give mortgages for any other purposes than such as are authorized by the statutes is, therefore, illegal and void. But according to the decision of the court for the correction of errors before referred to, that does not invalidate the trust estate, or any of the other purposes of the trust. Again ; the trust to receive the rents and profits and income of the property and to apply a part of the same to the support of Mrs. Eckford and such of the family as chose to continue to live with her, rendered the estate inalienable under the 63d section of the article of the revised statutes relative to uses and trusts. But as that trust was necessarily limited to the life of Mrs. Eckford, even if she should die before the first of February, 1840, the estate or interest she and those of the family who should choose to live with her had in the rents and income of the property could not render the property inalienable beyond one life in being at the death of the testator. And as the interest she and her family had under this clause of the will was wholly disconnected with the subsequent illegal trust, to provide for the surviving members of the family after her death, that trust could not render the estate invalid in the hands of the trustees during her life. This subsequent provision depending on the contingency of her dying before the 1st of February, 1840, and being for an absolute term, not determinable by the expiration of not more than two lives in being at the death of the testator, might possibly suspend the power of alienation for a longer time than was allowed by law. It was, therefore, absolutely void in its creation. (1 *R. S.* 723, § 14 ; 726, § 36.) And the validity of the residue of the trust is the same as if this provision for the support of the family after the death of Mrs. Eckford had not been contained in the will.

I can see nothing, therefore, which can impair the validity of the devise in trust to the executors; which devise in trust would have been divested by the death of Mrs. Eckford, upon the continuance of whose life it depended, if she had died at any time previous to 1840; the longest period contemplated by the will for the continuance of the trust estate. For when all the legal purposes for which an express trust is created ceases, the estate of the trustees also ceases under the provisions of the revised statutes. (1 *R. S.* 730, § 67.) The power to partition the estate in 1840, and to sell if the executors should think it best to do so for the purpose of making such partition, was a mere power in trust which did not require the continuance of the legal estate in the trustees to sustain it. And if the power to sell at the end of an absolute term not depending upon a life or lives in being at the death of the testator would of itself render the estate inalienable until February, 1840, even if Mrs. Eckford should die so as to divest the estate of the trustees before that time, that part of the power would alone be inoperative and void, according to the decision in *Darling* v. *Rogers & Sagory*, (22 *Wend. Rep.* 483,) and could not prevent the execution of the residue of the power authorizing the partition of the property. The statute in terms provides that where an express trust is created which is not authorized by law, no estate shall vest in the trustees; but the trust, if directing or authorizing the performance of any act which may lawfully be performed under a power shall be valid as a power in trust. (1 *R. S.* 729, § 58.)

I have no doubt whatever that the testator at the time of making his will had in contemplation the property in the neighborhood of Love Lane, which his grand daughter then held as real estate under the deed of August, 1826, if she elected to consider that an absolute conveyance when she became of age, as well as the real estate which she then held under the will of her father and which remained unsold, as a part of such real estate inherited from her parents or one of them which was by the terms of the will to be appraised

1842.

Irving
v.
De Kay.

and brought into hotchpot in apportioning the residuary property among the five devisees and legatees. That real estate, as well as her other real estate remaining unsold, was the proceeds of the bounty of the testator to Dr. Drake as his son-in-law. And the statute of 1815, under which a part of her real estate had been sold, and the proceeds of which were afterwards vested in this property under the deed of August, 1826, in terms declared that the proceeds of such a sale should be considered, not only in relation to the statutes of descent and distribution, but *for every other purpose,* as if the real estate had not been sold. (*Laws of* 1815, *p.* 104, § 5.) The property embraced in that deed was therefore in law real estate inherited from her parents, or one of them, and which was originally received or derived from the testator, within the intent and meaning of this will.

The testator also contemplated an appraisal of the property at its value at the time when the same was to be distributed, at the termination of the trust estate. For at no other time could the appraisal be made of his residuary property, to ascertain its real value as a subject of distribution, so as to produce equality. For while the property of the testator was charged with an indefinite amount for the support of the widow, and of such children and descendants, including this grandchild, as chose to live with her, it is evident there was no principle upon which the value of this residuary property could be ascertained. For although the value of the life of the widow and the chances of her outliving the duration of the trust term could be ascertained by the life-tables, there was no mode by which the necessary expenses of herself and such of the children and descendants of the testator as might elect to live with her could be ascertained ; so that each of the five would, with the property previously received, have an equal share of property, one not more than another, as directed by the will. If the widow had died previous to February, 1840, so as to give to those who had received nothing their shares of the residuary estate at her death

1842.

Irving
v.
De Kay.

before that period, that would be the proper time to make the valuation, so as to produce the equality contemplated in the will. But as she survived beyond that period, so that the trust estate terminated by lapse of time merely on the first of February, 1840, that is the period in reference to which the appraisal must be made of the real estate of the grand-daughter, and the real estate, if any, which Dr. De Kay had received, in connection with the testator's residuary estate, for the purpose of settling the shares of the several persons entitled to participate in the division.

There may be some difficulty in making the appraisal of the testator's residuary estate, in February, 1840, as the outstanding claims against his estate have not yet been settled. But I understand the answer of the defendants G. C. De Kay and wife to admit that upon the principle of valuation which I have determined to be the true one, Mrs. De Kay will not be entitled to participate in her grandfather's bounty any further than she has already received it; by the advances to her father from which her present real estate is derived. If I have mistaken the purport of the answer in this respect, or if there was any advance to Dr. De Kay which ought to be deducted from his wife's share, the decree will provide for the appointment of appraisers according to the directions of the will, if the parties cannot agree upon them without the assistance of the court.

The question whether the widow was or was not entitled to dower in the estate appears to be of little consequence, if she died intestate so as to entitle each of her children and her grandchild to participate equally in her estate. But as it is suggested that she made a will, which may be valid, it is proper to dispose of that question at this time. I have examined the will of H. Eckford in reference to this question and find nothing in it inconsistent with her claim of dower. And the recent decision of this court in the case of *Fuller* v. *Yates*, (8 *Paige's Rep.* 325,) is an authority in favor of her claim as made in the origi-

nal bill. Indeed, it could not have been the testator's intention to deprive the widow of dower in his estate, unless he intended to leave her entirely destitute of a support in case her life should be prolonged beyond the 1st of February, 1840. For I find no provision whatever in the will for her support after that time.

If neither of the parties wishes an appraisal, upon the principles above settled, it may not be considered necessary to sell the real estate until the result · of the suits against the executors is known. For if those suits should result favorably to the residuary devisees, it may be for the interest of all parties to have an actual partition of the whole or of a considerable portion of the real estate which may remain. In the meantime a decree may be entered declaring the construction of the will and the rights of the parties under it, and referring it to a master to take and state the account of the executors in relation to the trust fund, and reserving further directions. The costs of all parties thus far, however, ought to be borne by the estate; as the difficulties arising from the will itself have produced this litigation. And the costs of the executors must be taxed as between solicitor and client, so as to cover their reasonable counsel fees which they have been obliged to pay in discharge of their trust; to be settled and allowed by the vice chancellor upon taxation. (*See Mohun* v. *Mohun,* 1 *Swans. R.* 203. *Lewin's Law of Trusts,* 456.)

Decree accordingly.