## GOODHUE, Ex'or, v. CLARK & a.

An executor may file a bill for direction of the court in executing a will, the construction of which is doubtful.

Proof of the situation and circumstances of a testátor and his family, of his property and legatees, and the like, are always admissible to aid the construction of a will.

IN EQUITY. The bill states that W. Clark, deceased, by his will gave legacies to his wife, brothers and sisters, and to the Home Missionary Society, $150, and to the Foreign Missionary Society $150, and directed his real estate to be sold after his wife's decease, and gave two thirds of the proceeds to the Foreign Missionary Society, and one third to the Home Missionary Society, and appointed the plaintiff his executor.

The will was duly proved, and the plaintiff accepted the trust of executor, and the widow is since deceased.

The heirs deny that the charitable gifts can be carried into execution.

The American Home Missionary Society, the New-Hampshire Missionary Society, and the American Board of Commissioners for Foreign Missions, claim that they are respectively entitled to these charitable gifts.

It prays that the defendants may answer and set forth the rights they claim under the will, and how they make out their claims, that the estate may be applied according to the will, the charitable bequests may be established, and directions given for carrying out the same, &c.

The answer of the heirs admits the allegations of the bill, but claims that the trusts of the will cannot be executed, because there are no such corporations, or associations, as the Home Missionary Society, or the Foreign Missionary Society. It denies that by Home Missionary Society is meant the American Home Missionary Society, or that by Foreign Missionary Society is meant the Ameri-

can Board of Commissioners for Foreign Missions. It submits that besides the societies above named, there are other home missionary societies, as the Board of Domestic Missions of the General Association of the Presbyterian Church in the United States of America, the American Baptist Home Missionary Society, the Board of Domestic Missions of the Dutch Reformed Church in the United States, and the Board of Domestic Missions of the Protestant Episcopal Church of the United States.

And besides the American Board of Commissioners for Foreign Missions, there are other foreign missionary societies: as the Board of Foreign Missions of the General Association of the Presbyterian Church in the United States of America, the American Missionary Association, the American Missionary Union, and four others named— all of which had long existed, &c. The testator, when solicited to give to the said American Board of Commissioners, refused, and absented himself from the house of worship when contributions were to be taken for them. For the last ten or twelve years of his life he withdrew from the Congregational Church, and their meetings and communion. The heirs deny that it appears by the will which of these societies is intended, or that the claimant societies were intended. They claim the estate as heirs at law.

The answer of the American Home Missionary Society and of the New-Hampshire Missionary Society admits the allegations of the bill; claims that the charitable gifts may well be carried into execution; claims that the New-Hampshire Missionary Society is the party intended in the bequest to the Home Missionary Society, and the legacy should be paid to them; states that the American Home Missionary Society is an association formed to assist congregations unable to support the gospel ministry, and to send the gospel to the destitute in the United States, &c., doing business in New-York city. The New-Hampshire Missionary Society is a corporation established by the law

of New-Hampshire, doing its business at Concord; having for its object the support of missions and the spread of the gospel in New-Hampshire, &c. The said New-Hampshire Missionary Society is auxiliary to the American Home Missionary Society, having the same objects in view. The contributions and legacies for home missions in New-Hampshire are distributed through the New-Hampshire Missionary Society.

The New-Hampshire Missionary Society, whether understood as separate or as auxiliary, as aforesaid, is commonly called the Home Missionary Society; the funds of said society are mainly derived from contributions and bequests from congregational societies, &c. It is the society to which Orthodox Congregational churches and societies, and their members, make contributions to aid home missions, and there is no other society so known, or denominated by Congregationalists in New-Hampshire.

The deceased was a member of the Orthodox Congregational church, and had been for many years, and expressed great interest in home missions, as conducted by said New-Hampshire Missionary Society; had contributed to its funds for twenty years; was a subscriber for the Home Missionary, a periodical issued by said American Home Missionary Society, and in his life expressed an intention to make a bequest to said New-Hampshire Missionary Society, &c. It denies the right of the heirs, and prays the executor may be decreed to pay said legacy to said New-Hampshire Missionary Society.

The answer of the American Board of Commissioners for Foreign Missions admits the facts alleged in the bill; claims the charitable gifts may well be executed; claims they are intended in the bequest to the Foreign Missionary Society; states they are a corporation established by the laws of Massachusetts, by the style aforesaid, and their place of business is Boston; their object is propagating the gospel in heathen lands, by supporting missionaries,

&c. Said corporation is generally known and designated in the community as the Foreign Missionary Society. Their funds are mainly derived from contributions of Congregational churches and societies, and legacies of their members. It is the corporation to which Orthodox Congregational churches and their members usually contribute in aid of foreign missions; and there is no other corporation or association usually known among Orthodox Congregationalists in New-Hampshire, as the Foreign Missionary Society. The testator was, and for many years had been, a member of the Orthodox Congregational church in Hancock, which contributed for foreign missions to this society. The testator so contributed with others, was a subscriber to the Missionary Herald, a monthly periodical issued under their direction, giving accounts of foreign missions conducted by them, and expressed great interest in those missions. This board is the only foreign missionary society to which the church in Hancock, or to which Congregational societies, or their members, usually contributed, &c.

They deny the claim of the heirs-at-law, and pray a decree that the legacies may be paid to them.

General replications are filed to the answers.

*S. G. Clark,* for the plaintiff.

The bill is filed by an executor to have the charitable trusts and devises in the will established. The supposed devisees and the heirs-at-law of the testator are made defendants. They have all appeared and answered, and general replications have been filed.

The defendant societies, by their answers, claim that they are the parties to whom bequests are intended to be given by the will. But the heirs-at-law, by their answer, claim that said bequests are void for uncertainty. All the answers admit the allegations of the bill. The complainant desires that the court will determine whether this is a

proper case for the application of extrinsic evidence to aid in the interpretation of a will; and if it is such a case, that a commission may issue to take testimony. If it is not a case for the application of extrinsic evidence, that the court will make such a decree as the facts stated in the bill and admitted by the answers, may warrant.

*S. N. Bell,* for the defendant societies.

This is a bill brought by the plaintiff, the executor of the will of Warner Clark, to determine in what manner he shall execute the trusts contained in said will.

The heirs-at-law in their answer say that the claimant societies are not entitled to the bequests, and that the trusts of the will cannot be carried into execution, and are void for uncertainty; because it does not appear for which of several home and foreign missionary societies, set forth in their said answer, the bequests were intended.

The question now raised in the case is, whether there appears on the bill and answers a proper case for the admission of extrinsic evidence to aid in the interpretation of the will?

The defendant missionary societies claim that there is a latent ambiguity; that upon their answers, and upon the several answers of the other defendants, there arises this question, to which of several missionary societies, both home and foreign, did the testator intend his bequest to be made?

That state of facts appearing, extrinsic evidence of the circumstances surrounding the testator, his position, and associations in life, and generally all other material facts tending to determine the question, to whom he intended his bequests to be made, are competent to be considered by the court, in determining the construction to be given to the will. And a commission should be issued to take the testimony, to determine the respective rights of the different claimants.

The rule is well stated in Wigram on Extrin. Ev. 13, 14 : "For the purpose of determining the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court will inquire into any material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, his family, and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quality of the interest he has given by his will."

The same is true of every other dispute respecting which it can be shown that a knowledge of extrinsic facts can in any way be made ancillary to the right interpretation of the testator's words.

Courts of law in certain cases admit extrinsic evidence of intention, to make certain the person or thing intended, when the description of the will is insufficient for that purpose; as, where the object of the testator's bounty is described in terms which are applicable indifferently to more than one person or thing, evidence is admissible to prove which of the persons or things so described was intended by the testator. *Ibid.* 14.

Evidence of material facts is in all cases admissible to aid the exposition of a will; and every claimant under a will has the right to require that a court of construction, in the execution of its office, shall, by means of extrinsic evidence, place itself in the situation of the testator, the meaning of whose language it is called upon to declare. *Ibid.* 183, 184.

Extrinsic evidence of all the surrounding circumstances is admissible. 1 Greenl. Ev., secs. 287–291, and notes and cases cited; *Doe* v. *Martin,* 4 B. & Ald. 771; *Second Congregational Society in Hopkinton* v. *First ditto,* 14 N. H. 315; *Trustees of Newmarket Seminary* v. *Peaslee,* 15 N. H. 319, *et ubique.*

It has been suggested that there should be a decree for the parties to interplead, but that course would seem to lead to needless delay, and after the decree should be complied with would leave the defendants substantially in their present position. 3 Daniel Ch. Pr. 1765; Story's Eq. Pl., sec. 822.

Bell, J. This bill is an application by an executor to the court for their direction in regard to the proper performance of his duties. It is of the nature, in many respects, of a bill of interpleader, but it is not strictly a bill of that class, since the executor cannot bring the subject of the controversy and the parties who claim it before the court, and there leave them to litigate the matter among themselves. He is still bound to act in his official position, and must remain a party to the close of the controversy; while the plaintiff, in a bill of interpleader, seeks only a decree that the bill has been properly filed, and may then retire from the case.

The bill is filed upon the well settled principle of equity, that any trustee, placed in circumstances in which he may have reasonable doubt as to the disposition of the funds in his hands, has a right, for his own safety, to apply to a court of equity for directions, making the persons interested parties to the proceeding. *Curtis* v. *Chandler,* 6 Mad. 123; *Jones* v. *Stokell,* 2 Bland. 409; *Heyden* v. *Marmaduke,* 19 Miss. 403; a principle always held equally applicable to the case of an executor or administrator. *Rogers* v. *Ross,* 4 Johns. Ch. 608; *Irving* v. *Dickey,* 9 Paige 533; *Osborn* v. *Taylor,* 12 Gratt. 117; *Mohun* v. *Mohun,* 1 Swanst. 203; Lewin on Trusts 456; *Studholine* v. *Hodgson,* 3 P. Wms. 303; *Tucker* v. *Seaman's Aid Society,* 7 Met. 198; *Angell* v. *Hadden,* 16 Ves. 202; *Farley* v. *Blood,* 30 N. H. (10 Foster) 362; *Floyd* v. *Barker,* 1 Paige 480; *Decker* v. *Miller,* 2 Paige 149; *Irving* v. *Dekay,* 9 Paige 521; *Rashleigh* v. *Masters,* 1 Ves. Jr. 205; 2 Wms. Ex. 1624.

The principle by which cases of this sort are governed is stated by *Woods*, J., in *Farley* v. *Blood*, 30 N. H. (10 Foster) 362, agreeably to *Angell* v. *Hadden*, 16 Ves. 202. " Questions arising on bills of interpleader are disposed of in various modes, according to the nature of the question and the manner in which it is brought before the court. An interpleading bill is considered as putting the defendants to contest their respective claims, as a bill by an executor, or trustee, to obtain the direction of the court upon the adverse claims of the defendants. Therefore at the hearing, if the question between the defendants is ripe for decision, the court decides it; and if not ripe for decision, directs an action, or an issue, or a reference to a master, as best suited to the nature of the case." See Mad. Ch. 177; Jer. Eq. Jur. 347; Welf. Eq. Pld. 157; Wat. Ed. Inj. 405.

Here the case is not ready for a hearing, much less ripe for decision. The defendants have severally answered, admitting the case made by the bill, but alleging certain extraneous facts, upon which the heirs-at-law claim that the legacies are void for uncertainty, and each of the other defendants claim that they are to be regarded as the legatees intended. These facts are denied by the replication, and the case cannot properly be heard until evidence is taken and submitted to the court.

At this stage of the case the parties, to save the expense of taking the evidence, submit to the court the question, whether this is a proper case for the application of extrinsic evidence to aid in the interpretation of the will. As this is a question which must necessarily arise in the consideration of the case, and as its decision in no way depends upon the nature, or character, or amount of the evidence which may be taken, the court have not hesitated to examine it. The doubt as to the parties intended to take as legatees, arises from the fact that there is no society bearing the precise names mentioned in the will,

while there are several that have names somewhat like them, and that might be supposed to be intended.

In *Shore* v. *Wilson*, (Lady Hewley's Case) 9 C. & F. 355, 5 Scott N. R. 958, *Parke*, B., laid down the rule thus: "For the purpose of applying the instrument to the facts, and determining what passes by it, or who take an interest under it, proof is admissible of every material fact that will aid the court to identify the person or thing mentioned in the instrument, and place the court, whose province it is to declare the meaning of the words of the instrument, as near as may be in the situation of the parties to it."

The same principle is well stated by Wigram on Extrinsic Evidence, cited by the defendants, and found in 1 Greenl. Ev. 326; 2 Wms. Exors. 925, note. A similar rule is laid down by Jarman, 2 Pow. Dev. 6; 2 Jar. on Wills 740; Wm. Ex. 989; 1 Greenl. Ev., sec. 288; *Hornbeck* v. *Am. Bible Society*, 2 Sandf. Ch. 133; *Banks* v. *Phelan*, 4 Barb. 80; *Winslow* v. *Cummings*, 3 Cush. 358; *Minot* v. *Boston Asylum*, 7 Met. 416; *Tucker* v. *Seaman's Aid Society*, 7 Met. 416; *Hiscox* v. *Hiscox*, 5 M. & W. 363; 2 Phill. Ev. 280, 293; *Doe* v. *Martin*, 4 B. & Ad. 785; and *Webster* v. *Atkinson*, 4 N. H. 21; *Second Cong. Soc. in Hopkinton* v. *First*, 14 N. H. 315; *Trustees* v. *Peaslee*, 15 N. H. 319.