Freeland *v.* Mandeville.

ELIZA L. FREELAND

*v.*

HENRY V. MANDEVILLE, executor, and others.

A testator directed his executors to sell all his real and personal estate, and out of the proceeds to purchase a house and lot, to be occupied by his widow and his five youngest (her) children, as a home, until the youngest child should attain to majority, and directed them to invest the balance, after payment of his debts, and, out of the income, provide for the support of the same persons and a son of his by a former wife, for the same time, and on the arrival of that period, to sell the house and lot and divide the proceeds and the principal of the investment equally among all his children, making no provision whatever for the widow beyond the period of the majority of the youngest surviving child. After payment of debts there remained nothing but the testator's homestead farm. This was sold, and the house and lot bought with the proceeds. The widow released her dower in the farm, but only on the express understanding and assurance, from the surviving executor and his counsel, that she would be entitled to the value of her dower on sale of the house and lot. *Held,* that, under the circumstances, she was not put to her election, but was entitled to the value of her dower in the farm, and the provision also; and that she had never, in fact, been put to her election.

---

Bill for relief. On final hearing on pleadings and proofs.

*Mr. Gilbert Collins,* for complainant.

*Mr. Charles H. Voorhis,* for the answering defendants.

THE CHANCELLOR.

The complainant files her bill to obtain satisfaction for her dower in certain land in Hudson county, of which her husband, Lawrence Freeland, died seized. He died in March, 1855. He was a widower, with six children, when she was married to him, and she had, by him, five children. By his will, after appointing his brother-in-law, Henry Mandeville,

and his sons Abraham and Smith Freeland, and the survivors and survivor of them, executors, he authorized, empowered and directed them to sell, as soon after his decease as they might deem best, all his personal and real estate, either at public or private sale, and upon such terms as to them might seem most advantageous, and of the proceeds thereof, after payment of his debts, to invest so much as might be necessary for the purpose, in the purchase of a suitable lot or lots of ground, and to erect a suitable dwelling-house thereon, or in the purchase of a lot or lots and dwelling-house already erected, as they might prefer, in such place as they might think most advisable; which dwelling-house and land should be used and occupied by his widow and his five youngest children, until the youngest child should arrive at full age, as a permanent and comfortable home; and he directed that, on the arrival of the youngest child at full age, the house and land should be sold by his executors, and the proceeds equally divided by them among his children living at the time of his decease, and their heirs.  He further directed that, until such sale thereof, the property should be held in trust, by his executors, for the benefit of his children.  He further directed that his executors should invest, on bond and mortgage, the balance of the proceeds of his real and personal estate, after payment of his debts and providing the dwelling-place, and, from the annual income to be derived from the investment, provide for the support of his widow and the five youngest children, until the youngest of those children should attain the age of twenty-one years, and also for the support of his son Abraham, (a son of his first marriage,) until he should marry or remove from the family.  He also gave and directed the executors to pay Abraham $500, and directed that when the youngest of his living children should attain to full age his executors should divide the money so invested, with all its accumulations, equally among his children then living, or their heirs.  He also provided that if Abraham should marry, he should receive, in addition to his

Freeland v. Mandeville.

equal share of the estate, $400, for the purchase of two horses and a wagon and harness. In 1864, the other executors being then dead, Mr. Mandeville sold the testator's real estate, a farm, for $13,000, clear of the widow's dower. She released her dower to the purchaser for a merely nominal consideration. It appears that, for three years after the testator's death, she and her children lived on the farm, and that it was leased for five years thereafter, for $400 a year, out of which sum the annual taxes and repairs were paid, together with the interest on a mortgage of $2,000 on the property. After the tenant left the property it was sold, in 1864, as above mentioned, for $13,000, over and above the mortgage. Out of the money received from the sale a house and lot were bought, according to the directions of the will, and the widow and her children lived on that property until the youngest surviving child became of age, and the widow continued to occupy it after that time until it was sold, which was in March, 1876. She and the children were supported, in part, at least, by the interest of so much of the proceeds of the sale of the farm as was not invested in the house and lot. There appears to have been no personal estate of the testator to be invested for the support of her and her children, and there does not appear to have been any real estate except the farm. She claims compensation for her dower in the farm, and her claim is resisted by the heirs of her husband, on the ground that, by the will, provision in real estate was made for her in lieu of her dower, from which provision she did not dissent, but which, on the other hand, she accepted. The provision made for her by the will was not such as to put her to her election under the sixteenth section of the dower act. *Van Arsdale v. Van Arsdale*, 2 *Dutch.* 404. Nor was she put to her election on the ground that the testator intended the provision made for her by the will in lieu of her dower. That provision was, practically and substantially, the use, in common with her five children and Abraham, of the proceeds of the sale of the farm until the youngest surviving child should attain to

Freeland *v.* Mandeville.

full age. By her dower she would have been entitled to the use of a third of the property for her life.

In *Colgate* v. *Colgate*, 8 *C. E. Gr.* 372, where a testator devised all the residue of his estate to his executors, in trust, to sell and dispose of his real estate, and to convert the personal into money, and to divide the proceeds of both into two equal parts; to invest one of such parts and pay the income thereof to his wife, during her life, and, on her death, to divide the principal equally among his children then living, and to divide the remaining half into as many equal shares as he should leave children surviving him, and to pay one of such last named shares to each child, &c., the rents and income of the real estate, until the sale, to be divided in the same shares, it was held that the provision for the widow was inconsistent with her dower, and that she was required to elect. The direction to collect the rents and income of the real estate and to divide them in the same shares as directed as to the income of the personal estate, appeared to the chancellor inconsistent with the estate in dower, and to show more clearly that the provisions for the widow were intended in lieu of dower. The chancellor said that it was hardly possible to doubt that the testator intended that one-half of the income should be all that the widow should receive, and that he did not mean that she should, in addition, have one-third of the share given to her children. He adduced in support of his conclusion certain English cases, and the case of *Savage* v. *Burnham*, 17 *N. Y.* 561. In all the cases cited by him the provision for the wife was, as it was in the case before him, for her life at least. In the last mentioned case the testator devised all his real estate in trust to sell, at the death of his wife, and directed that she should, during her life, take and receive one-third of the clear yearly rents and profits thereof.

In *Chalmers* v. *Storie*, 2 *V. & B.* 222, the testator gave all his real and personal estate to his wife and two children, equally to be divided among them. In case of the death of

Freeland *v.* Mandeville.

both children in the life-time of his wife, their shares were to go to her for her life; and, should they survive her, at her death her share was to go to the children.

In *Dickson* v. *Robinson, Jacob* 503, the testator devised all his real and personal estate to his wife, in trust for herself and her children.

In *Roberts* v. *Smith*, 1 *Sim. & Stu.* 513, the will gave a messuage in fee to the wife of the testator, and devised all the rest of his estate, leasehold and freehold, to her and two other persons, in trust, to pay one-half of the income to her during her widowhood, and the other half to the maintenance of the testator's children.

In *Stark* v. *Hunton, Sax.* 216, the devise was to the wife, during her widowhood, of a tavern-house and lot and the furniture and stock therein; the house and lot and furniture to be disposed of "according to law" at her marriage.

In *Norris* v. *Clark*, 2 *Stock.* 51, it may be remarked, the will declared that the wife's acceptance of the gift should forever exclude her from any further demands on the testator's estate. In the present case the provision made for the testator's "wife was not equal to her dower, either in amount or duration." She has outlived the period of time when her youngest child attained to full age, and if she is without right to dower she is wholly unprovided for. The testator appears to have intended to provide for her wants and those of her children, but he seems not to have carried his thoughts in reference to her support beyond the period of the majority of his youngest surviving child. He provided a home and support for her and her children up to that time, but while he provided for them thereafter, he made no provision for her from that time. He has not expressly declared his intention to bar her dower. Said Chancellor Walworth: "To bar the widow of her dower by implication, where the testator has not in terms declared his intention on the subject by his will, the provisions of the will, or some of them, must be absolutely inconsistent with the claim of dower, so that the intention of the testator will

be defeated as to some part of the property devised or bequeathed to others if she takes her dower as well as the provisions made for her by the will." *Sandford* v. *Jackson,* 10 *Paige* 266. "The intention must be so plain," says Chancellor Vroom, "as not to admit of any reasonable doubt. The claim of dower must be inconsistent with the will or so repugnant to its provisions as to disturb and defeat them." *Stark* v. *Hunton, Sax.* 216. Said Chancellor Williamson in *Norris* v. *Clark,* 2 *Stock.* 51, "To debar the widow of this right" (of dower) "and to put her to an election between her dower and a bequest in the will, there must be some express declaration of the testator excluding her from her right, or it must be clear by implication that such was his intention." "It is not enough," said Vice-Chancellor Kindersley, "to say that upon the whole will it may fairly be inferred that the testator intended his widow should not have her dower; in order to compel her to elect, the court must be satisfied that there is a positive intention either expressed or clearly implied that she is to be excluded from dower." *Gibson* v. *Gibson,* 17 *Eng. L. & E.* 349.

It by no means appears to me beyond a reasonable doubt that the testator intended that his widow's acceptance of the meagre and inadequate provision of his will, far less, as it in fact was, than that which her dower right would have secured to her, should deprive her of that right. It appears rather that he intended, by the provision which he made, to keep her young family together until the youngest should attain majority, and to give her a home and support with them for their benefit until that period without reference to or in anywise affecting her legal right in his real property. Nor were any of the provisions of the will dependent on the relinquishment of her dower. The land might have been sold subject to her dower. It was, in fact, sold on an arrangement for the relinquishment of it on compensation being made to her out of the purchase-money. The fact that she consented to the sale, and took her dower out of

Freeland *v.* Mandeville.

the purchase-money, was regarded by Lord Alvanley, M. R., in *Davis* v. *French*, 2 *Ves. Jun.*, 572, 577, as a complete answer to the objection that the widow's claim of dower would obstruct the sale. The English cases are numerous in which, under similar and even far more advantageous provisions for the widow, the court of chancery has held that she was not bound to elect, but was entitled to her dower as well as the special provision made for her by the will, and that her claim of dower was not inconsistent with the testator's direction that his real estate be sold in order to furnish the means for such special provision. Many of them will be found in *Roper on Husband and Wife*, and *Clancy on the Rights of Married Women*. There are also American cases to the same effect. *Wood* v. *Wood*, 5 *Paige* 596 ; *Irving* v. *Dekay*, 9 *Paige* 521; *Lewis* v. *Smith*, 5 *Seld.* 202. Chancellor Vroom, indeed, in *Stark* v. *Hunton, Sax.* 216, 227, remarks upon the policy of the English law, with respect to dower, and contra-distinguishes from it the policy of our law as manifested by our statute, and Chancellor Zabriskie in *Colgate* v. *Colgate*, 8 *C. E. Gr.* 372, approves the distinction. Our statute, it may be remarked, however, has received a strict construction, *Van Arsdale* v. *Van Arsdale, ubi supra*, and the rule of construction laid down by Chancellor Vroom is no less stringent and exacting in favor of the widow than that laid down in the English cases. Here, as there, the question is merely as to the intention of the testator.

The widow, in the case before me, has never in fact elected to receive the provisions of the will in lieu of her dower. The evidence is clear that she was not called upon to make an election. Up to the time of the sale of the farm she and the family resided together there ; and when it was sold, in 1864, and she released her dower in it, it was on the understanding, on her part and on that of the executor and his legal counsel, and she was then so advised by the latter, that she was not required to elect, but was entitled to the provision under the will, and her dower also.

The counsel above referred to testifies that he told her that she would get the dower out of the fund realized from the sale of the property; that the executor, at the time of the final settlement, would give it to her, and that the amount which she would be entitled to receive in commutation would depend upon her age. He adds, that it was not her intention to release her dower without compensation, and he says that he should judge that she had not the slightest idea of doing anything of that kind, and adds, that it was not the intention of the executor, or of himself, that she should do so. She does not appear to have ever abandoned her claim to dower, or to have been aware that she was or might be required to elect between it and the provision made for her by the will. Nor will the fact that she availed herself of and enjoyed the provision made for her in the will, be, under the circumstances, construed into an election; for not only was she never apprised that she was required to elect, but, on the other hand, the executor, through his counsel, advised her to the contrary. What she would have done in the premises, had she not been so advised, appears by her testimony. She says she never would have signed the release if she had thought she would not get anything for it. Nor is it difficult to conjecture what her action would have been had she been put to her election. Her dower would have given her the use of one-third of the farm, (which was the whole estate left after the payment of the debts,) subject to the encumbrance of the mortgage. That would undoubtedly have been, as before remarked, a far better provision for her than that which was made by the will. The executor, who is her brother-in-law, swears that if he had not understood and believed that she would be entitled to the value of her dower, when the youngest child should have attained to full age, he would not have got her to sign the release. He seems to have first learned that her right to dower was disputed after his accounts as executor were filed and restated by the

court, which was after he had sold the property bought by him for the family.

In my view of the case, the widow was entitled both to the provision made for her by the will and her dower. Under the circumstances, she should, however, have dower only from the time when her enjoyment of that provision ceased, but is entitled to it from that time. There will be a decree accordingly.