DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW-JERSEY,

### AT JULY TERM, 1850.

---

### HOPPER v. HOPPER.

---

1. Where a husband dies seized of lands, it is the duty of the heir or devisee to assign dower without demand, and no demand is necessary to enable the widow to recover the value from the death of her husband. The statute of New Jersey has changed the English rule in this particular.

2. *Tout temps prist* is not a good plea in dower in bar of damages for the detention of dower in lands of which the husband died seized.

---

On writ of error to Supreme Court, (*a*). Upon writ of dower *unde nihil habet.*

The record brought up by the writ of error in this case was as follows, with proper *placita* and warrants of attorney :

New Jersey Supreme Court, April Term, 1846, Bergen county, *ss.*—Maria Hopper, who was the wife of John J. Hopper, deceased, by A. O. Z., her attorney, demands against Jacob J. Hopper, the third part in two messuages, two barns, two gardens, four orchards, two hundred acres of arable land, two hundred acres of pasture land, two hundred acres of meadow land, two hundred acres of wood land, and two hun-

(*a*) See 1 *Zab.* 543.

715

dred acres of land covered with water, with the appurtenances, in the township of Lodi, in the county of Bergen, as the dower of the said M. H., of the endowment of the said J. J. H., deceased, heretofore her husband, and whereof she hath nothing.

And the said J. J. H., by E. R. V. W., his attorney, comes and defends the wrong and injury when, &c. And as to all that part and parcel of land, with the appurtenances, in the township of Lodi, in the county of Bergen aforesaid, bounded and described as follows, to wit: (describing three tracts by metes and bounds). All which tracts and parcels of land and premises above described are parts and parcels of the said several tracts and parcels of land, tenements, and premises, in the said demand of the said M. H. mentioned, and whereof the said M. H. claims to be endowed, he, the said J. J. H., says, that from the death of the said J. J. H., late husband of the said M. H., he, the said Jacob, hath been always ready, and is still ready to render to the said M. H. her dower of the said tenements and premises, with the appurtenances, and rendereth the same in court here to the said M. H.

And as to the residue of the said lands and tenements mentioned in the said demand of the said M. H., and whereof the said Maria claims to be endowed as aforesaid, he, the said J. J. H., says he cannot render to the said M. H. her dower thereof, or any part thereof, because he saith that he, the said J. J. H., was not, on the day of suing forth the original writ of the said M. H., nor at any time since has been tenant thereof, and this he is ready to verify : wherefore, as to the said residue of the said lands and tenements, he prays judgment of the said writ, and that the same may be quashed.

And as to the said plea of the said Jacob, by him firstly above pleaded, the said Maria, for her damages, by reason of the detention of her dower aforesaid of the lands and tenements in said first plea described, parcel of the lands in her count above mentioned, with the appurtenances aforesaid, without this, that said Jacob is seized of said lands in said first plea described, or any part thereof, as heir-at-law of said John J. Hopper, says, that the said J. J. H., formerly her husband, died at Lodi, in the county of Bergen aforesaid, seized

in fee at the time of his death of the said lands in the said first plea described, with the appurtenances, and that, after the death of the said J. J. H., the said Jacob became seized thereof, and yet holds the same by virtue of a devise in the last will of the said J. J. H., deceased; and that she, the said Maria, after the death of the said J. J. H., and before the time of the suing out of the writ in this cause, to wit, on the first day of April, 1816, requested the said Jacob to render unto her, the said Maria, her dower in the aforesaid lands, in first plea described, with the appurtenances. Yet, nevertheless, the said Jacob, to render unto her, the said Maria, her dower in said last mentioned lands, with the appurtenances, hath wholly neglected and refused, from thence hitherto, and still doth neglect and refuse; and this she is ready to verify : wherefore she prays judgment ·and her damages, by reason of the detention of her dower aforesaid, to her to be adjudged.

And as to the said plea of the said Jacob, by him secondly above pleaded, the said Maria says that she cannot deny, but admits it to be true.

And the said Jacob, as to the said replication of the said Maria to the first plea of him, the said Jacob, saith, that the said Maria ought not, by reason of any thing in the replication. alleged, to have her damages for the detention of her said dower, in the introductory part of the said first plea and in the declaration mentioned, because, as · before, he saith, that he has been always ready, and still is ready, to render to the said M. H. her dower of the said tenement and premises, and of this he puts himself upon the country, &c.

To this rejoinder the demandant filed a general demurrer; to which the defendant put in the common joinder.

The judgment in the Supreme Court was entered in the following words : " Whereupon all and singular the premises aforesaid being seen, and by the said court now here fully understood, and mature deliberation being thereupon had, it appears to the said court here that the said plea, by the said defendant in manner and form aforesaid pleaded, and the matters therein contained, and also the said rejoinder, by the said defendant in manner and form aforesaid rejoined, and the mat-

ters therein contained, are, and each of them is, sufficient in law to bar and preclude the demandant from having or maintaining her aforesaid action thereof against the said defendant. Therefore it is considered, that the said Maria Hopper take nothing by her said writ, but that she and her pledges to prosecute, be in mercy, &c.; and that the said Jacob J. Hopper do go thereof without day, &c. And it is further considered by the court here that the said Jacob J. Hopper do recover against the said Maria Hopper the sum of ———— for his costs and charges, by him about his defence in this behalf laid out and expended, by the court here adjudged to the said defendant, and with his assent, according to the form of the statute in such case made and provided, and that he have execution thereof."

The following errors were assigned :

1st. That the rejoinder to the replications is insufficient, and that judgment on the demurrer ought to have been given for the demandant.

2d. That the judgment does not award to the demandant her dower in the lands, in the first plea of the defendant described.

3d. That the judgment does not award to the demandant her damages, or the value of her dower, from the death of her husband.

4th. That the judgment does not award to demandant her damages, or the value of her dower, from the commencement of this suit, or direct the same to be ascertained and assessed.

5th. That the plea of said Jacob, by him firstly above pleaded, is insufficient in law to answer the count of the demandant, or preclude the demandant from recovering her damages and the value of her dower.

6th. That judgment was given for the said Jacob, whereas by law it ought to have been given for the demandant, both for her dower and her damages.

*Zabriskie* and *Vroom,* for plaintiff in error.

The plea is *tout temps prist* only, without averring that the defendant is heir. The replication—1, denies that he is heir; 2, avers that husband died seized; and 3, avers *a demand* on April 6, 1846. On special demurrer it might have been bad

for duplicity, but if defendant rejoins he must answer the whole of it. The rejoinder is *tout temps prist*, no averment that he is heir or denial of the demand; this is clearly bad.

The plea of *tout temps prist* may be a good plea in New Jersey when pleaded by alienee of the husband; he *is* only liable for damages from demand : and as this *plea* was according to the precedents (as remarked by Justice Carpenter), it was necessary to show, by averments in the rejoinder, that the defendant was neither an alienee who, by our statute, nor an heir, who by the decisions on the statute of Merton, was entitled to plead *tout temps prist*.

But the chief ground relied upon for reversal is, that by the statute of New Jersey, no demand is necessary where the husband died seized to entitle the husband to damages.

We hold that this question was not settled by the court in *Woodruff* v. *Brown*, 2 *Harr*. 246.

Hornblower and Dayton, Justices, held a demand necessary. Ford and Nevius, Justices, held it unnecessary. White, J., concurred with Hornblower in his decision, and so did all the judges, but, on another ground, in which all agreed. That opinion has never been reviewed; the judgment was in demandant's favor. She could not bring error, and in *this court*, at least, the question is open.

All agree that, by the *words* of the statute of New Jersey, (*Rev. Laws* 397, *Rev. Stat.* 72, § 3,) the widow is entitled to damages without demand. The language is, " if she be deforced of her dower," *or* "cannot have it without suit," *or* "if it be not assigned to her in forty days from the death of her husband," she may sue for and recover the same, with damages from the death of her husband. In either of these two cases her right is absolute to recover, not one word to require demand expressly or by implication.

But it is said that the statute of Merton did not, by words, require a demand, and yet the English courts have held a demand necessary. To this the answer is—1, that the words of the statute of Merton are different, " if a widow be deforced of her dower, *and* cannot have it without suit," she must not only be kept out, but *also* put to her suit, which would not be the

fact if she could have it on demand; and 2, that however authority might settle the meaning of a statute against the plain meaning of the words, when they were the same, the authority ceases when the words are changed, as in this case.

There was an intention, by this statute, to change the English law of dower. The quarantine is extended from mansion house to whole farm, and from forty days until dower is assigned, and the alienee pays damages from demand. Why must the *intention* to change be denied in another case where the words are changed and the meaning unambiguous.

When a statute is re-enacted whose construction is settled, and the words are changed so as to alter the meaning, the inference is that a change was intended. 1 *Pick.* 43, *Ellis* v. *Paige;* 10 *Wend.* 528, *Tates* v. *Paddock;* 1 *Pick.* 155; *Rutland* v. *Mehan.*

Had the old statute been proposed for re-enactment, and any legislator desired to amend it, so as to make the heir liable for damages if he did not assign dower within forty days, whether demanded or not, could he have done so more effectually, as far as language is concerned, than by interlining the words "or if not assigned within forty days after the death of her husband?" Besides, else the forty days have no significancy in the statute; they do not limit quarantine, and dower and damages are now due upon demand, whether before or after the death of the husband.

But this judgment is wrongly entered in two other particulars. 1. It is that she take nothing by her writ; it denies dower as well as damages, and all agree that *tout temps prist* is only a defence to the damages. 2. This plea only protects from damages until suit brought. From the issuing of the writ damages are recovered when the plea is allowed. So are all the authorities. 1 *Lilly Ent.* 189, *Spiller* v. *Andrews; Parke* 298, 308, 303, 304, and 139; *Cases Temp. Hard.* 19, *Dobson* v. *Dobson;* 1 *Rich. Pr. C. P.* 509; 2 *Saund.* 45; *Rast. Ent.* 237.

*Halsted,* for defendant.

By demurring, demandant puts in issue the goodness of all

her own pleading; court must go back to the first error. *Gould's Pl. c.* 8, § 3; 7 *Bac. Plead. N.* 605; 5 *Cranch* 261; 11 *John.* 160.

The replication is bad for duplicity. *Gould's Pl.* 420, § 3.

If *tout temps prist* is good in any case it is good here. It does not appear from declaration that husband had been dead for forty days, he may have died the day before suit brought. It does not appear how defendant held, he may have been alienee of husband; and the question is broad and open here, whether this plea is good in any case.

If these matters were the foundation of the recovery of damages, they should have been set forth in the declaration, it cannot be aided by the replication.

The CHANCELLOR. The provisions of our statute are plain; and I think the wisdom and policy of them are equally plain. I see no reason for denying effect to them, or for construing them away. The peace of families will be much better promoted by making it the duty of the devisee or heir to assign dower within the forty days, and subjecting him to the payment of the value of it if he does not, than by furnishing him with a motive to neglect it until demand be made, by allowing him the use of it for nothing until the widow shall learn that a demand is necessary, and make demand. The plain reading of the act imposes this duty, and there is nothing in the nature of the requirement to induce us to doubt that it was the intention of the legislature. No sufficient reason can be assigned, in my judgment, why the devisee or the heir should occupy land to which the widow is entitled for her dower without compensating her for the use of it.

Instead of resorting to the decisions in England, or their statute, it seems to me we are required to say, that our legislature, by the different structure and language of our act, intended to introduce a different rule.

I concur in the reversal of the judgment.

RANDOLPH, J. The question in this case is, whether, under our statute, *tout temps prist* is a good plea in an action of

dower brought against the devisee. Under the English statute of Merton it is well established that the heir might appear in an action of dower, and plead that he *was always ready* (*tout temps prist*) to assign the dower, and thus prevent any damages being recovered against him, unless demandant replied, and proved that she had demanded her dower, and it had not been assigned to her ; in which case, or in case of recovery on any other plea than *tout temps prist*, she recovered damages from the death of her husband, he dying seized. Upon the death of the ancestor the lands went directly to the heir or devisee, and not to the widow, and she had not even a right of entry for her dower, but only a right to remain in the mansion house and appurtenances for forty days, in order that the heir might, during that time, assign her dower, which she forfeited, however, if she married during the *quarantine* (forty days) ; but if no dower was assigned to her, or improperly assigned, then she was deforced of her dower, that is, the land which she was entitled to have in dower was withheld from her (3 *Bl. Com.* 172; *Co. Lit.* 277,) and then she was compelled to bring her action to recover her dower; but until the statute of Merton, 20 *Hen.* 3, she recovered no damages. That act gave her damages from the death of her husband, if he died seized, but never if he did not die seized. Now, inasmuch as the plea of *tout temps prist* is a good plea under the statute of Merton, it seems conceded that, if our statute be the same, it must be good under that also. It always appeared to me that our statute was different from the English act, and that it gave damages in all cases, from the death of the husband when he died seized, and from demand made when he did not die seized ; and this view of the case was not entirely changed by the argument in this cause, though the question was very fully and ably argued. On examining the argument and matters more fully, however, in vacation, I feel perfectly satisfied that our statute and the English act are substantially the same, and that the former was not intended to, nor does in fact, introduce any new rule as to damages. The action of dower lies in two cases, when the husband dies seized of the lands in question, or when he was seized during coverture, but did not

die seized of them, they having passed in his lifetime over to another. At common law no damages were recoverable in either case, which was considered exceedingly hard where the husband died seized, and the heir refused to assign dower within the forty days, during which the wife was privileged to remain in the mansion house, and after which she was compelled to leave and sue for her dower. To remedy this special grievance the statute of Merton was passed, giving to widows who were " deforced of their dowers, and cannot have their dower or quarantine without plea" in the lands whereof their husbands died seized, damages to the full value of their dower from the time of the death of their husbands. Judge Paterson, in revising the statutes of New Jersey, thought proper, in reenacting the statute of Merton, to provide for damages in the case not provided for in the English act, *viz.* when the husband did not die seized, and in that case damages were given from the time demand was made of the tenant, because he came rightfully into possession during the life of the husband, and was entitled to notice of his death and demand of dower before he could be made liable.

It is said, in argument, that our statute provides for four cases, *viz :* 1, when deforced ; 2, suit brought ; 3, when dower is unfairly assigned ; 4, or is not assigned within forty days ; and that the statute of Merton only provides for two cases—1, where deforced ; 2, suit brought. But the object of both acts is the same, *viz.* when dower is withheld, to enable the widow to recover damages, if her husband died seized of the lands. The operative word of both is the word " deforced," so that suit has to be brought ; and our act is only a little more specific as to what may be a deforcement, adding the cases when the dower is unfairly assigned or not assigned within forty days, to obviate any doubt that may have arisen whether these cases amounted to a deforcement. In order to recover damages under either act, the widow must be deforced, that is, her just dower withheld from her over forty days from the death of her husband, and she compelled to bring suit therefor, then she recovered damages under either act. But suppose our act did not give damages in any case where the husband did

not die seized, and the statute had terminated with damages "from the time of her husband's death, if he died or shall die seized," and the last lines providing for the other case had been omitted, could any one then have doubted that our statute and the statute of Merton were identical, or that the connection of four causes for damages, instead of two, with the disjunctive conjunction only, would have made our act different? A widow, as before stated, can only bring her writ of dower for lands that her husband either died seized of or did not die seized of ; if the latter, she recovers no damages in England, but under our act she recovers damages from the time demand made ; if the former, she recovers from the death of the husband under the statutes of both countries. Under the English act, the heir could plead *tout temps prist*, because he was in by right of law, as the owner of the inheritance, from the death of the ancestor, and he was not compelled to assign dower till demand made, for the widow had not the right of entry on him, but might have her quarantine. Under our act, passed for the same purpose in substantially the same terms, the demandant can have no greater rights, and the defendant is entitled to equal privileges. That this was the intention of the legislature is the more apparent from the fact that, in the preceding section, they have extended the widow's quarantine from forty days "until such dower be assigned," thus giving ample protection to the rights of the widow and a severe penalty for the negligence of the heir. The alienee cannot plead *tout temps prist*, because he cannot say he was always ready to assign dower, he must therefore abide by his covenant ; but a devisee can say so, and can therefore plead the same plea, and for the same reason that the heir can. In discussing this matter, I have not considered the policy of the English rule on the questions of convenience, or otherwise, arising therefrom, but have merely endeavored to show that the two statutes are identical, and therefore that the construction placed on each should be the same. As the widow, under our act, may remain in the mansion house till dower is assigned, she may demand it when she pleases, and if removed by the heir or devisee, may maintain trespass, ejectment, or

dower against him, no great inconvenience can result to the widow ; but if the husband die abroad, or not in the actual occupancy, it seems reasonable that the heir or devisee, who came in by right, and against whom no entry lies by the widow, should have notice of the demand, if she insists on damages, else he might be mulcted in damages for not assigning dower to one he could not find. Demand may be on the premises, and is binding on the owner, but dower can only be assigned to the widow herself; and if she presents herself in a situation to receive it, that is, demands it, and it is not assigned to her, she recovers damages not from such demand but from the husband's death. I think the plea good, and judgment should be affirmed, with costs.

*For affirmance*—Justice RANDOLPH and Judge PORTER—2.

*For reversal*—The CHANCELLOR and Judges SCHENCK, SPEER, WALL, McCARTER, and RISLEY—6.

Judgment reversed.

The Court of Errors, having given judgment for the demandant on the demurrer, both for the recovery of her dower and damages, ordered the record to be remitted to the Supreme Court, in order that they might ascertain the amount of her damages, and issue execution therefor.

At the October term of the Supreme Court, *Halsted* and *Whitehead*, for defendant, suggested to the court that he had paid to the demandant, and she had accepted satisfaction for the annual value of her dower for several years since the death of her husband, and asked leave to withdraw the plea of *tout temps prist*, and to plead, in bar of damages, that she had received satisfaction.

*Zabriskie*, for demandant, contended that it was not in the power of that court to alter the judgment in this cause. That judgment had been given in the Court of Errors, and the record remitted to the Supreme Court merely to inquire of the damages, and to issue execution.

The Supreme Court refused leave to plead.

At the October term of the Court of Errors, application was made to that court to alter and amend the rule for reversal entered, so as to allow the defendant to plead that he had satisfied the demandant for the annual value of her dower and her damages, and an affidavit of the defendant was read to show the truth of the proposed plea.

*Halsted* and *Whitehead*, for defendant, contended that the plea of *tout temps prist* had been put in in good faith, and that the practice was to allow a defendant to withdraw a plea overruled on demurrer, and to put in a new plea.

They asked for leave to file a new plea, unless the court be of opinion that these matters might be given in evidence on the writ of inquiry, as was intimated by the Supreme Court in *Woodruff* v. *Brown*, and requested the opinion of the court as to which was the safe course for them to pursue.

*Zabriskie* and *Vroom*, for demandant, contended that the court could not now make an order for them to plead anew.

1. Because the judgment had been entered for the demandant on the former plea, and the record had been remitted to the Supreme Court, and was now there. This court might order an erroneous entry of the judgment given to be amended on their minutes, but could not at a subsequent term change the judgment actually given.

2. Because, in any court, leave to withdraw a plea overruled on demurrer, and to plead anew, could only be given before the entry of the judgment. In England, the practice is to move for leave to withdraw before judgment is *pronounced*, " we will give judgment for the plaintiff, unless defendant asks for leave to withdraw plea." Here the practice is more liberal, but there is no case where a new plea has ever been allowed to be put in after the judgment was entered or after the term in which judgment is given. " Let judgment be entered for the plaintiff, unless defendant plead anew in thirty days," is the usual rule for judgment.

Hopper v. Hopper.

Again, if the intimation in *Woodruff* v. *Brown* is law, (*Zabriskie* contended it was not) that the plea is not only useless but bad.

The court, without assigning any reason, refused to grant leave to plead.

CITED *in Rogers* v. *Potter*, 3 *Vr.* 86; *McLaughlin* v. *McLaughlin*, 5 *C. E. Gr.* 194; *McLaughlin* v. *McLaughlin*, 7 *C. E. Gr.* 511.