IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### NOVEMBER TERM, 1867.

---

### JOANNA WADE, WHO WAS THE WIFE OF JAMES W. WADE, DECEASED, v. HIRAM MILLER.

1. A decree in a foreclosure suit will not cut off a widow's claim to dower, the same being paramount to the lien of the mortgage, when the bill makes no allusion to such dower right, although the widow, on other grounds, is a party to the suit.

2. The interest of the mortgagee in the land, before foreclosure, is not such an estate as will prevent the merger of two estates in the same person, between which estates it is interposed.

3. Except between mortgagor and mortgagee, the interest of the latter in the land does not possess any of the qualities of an estate in land.

4. A married woman, who takes a conveyance of the equity of redemption in lands, her dower right being paramount to the mortgage thereon, and who, after the death of her husband, claims an interest by virtue of such conveyance, thereby extinguishes her action for dower.

---

This was an action of dower. The declaration was in the common form.

There were two pleas.

The first plea set up the following facts:

Wade v. Miller.

That James W. Wade, the husband of demandant, on February 16th, 1861, and during coverture of demandant, executed a mortgage on said lands, to secure four thousand dollars, which he owed to the State Bank at Elizabeth, and which mortgage was recorded on the twenty-seventh of May, 1861, but was not executed by demandant.

That James W. Wade, without demandant's joining, executed and delivered, July 5th, 1861, a deed of bargain and sale of said lands, to one William Earl, which deed was recorded July 5th, 1861, who, together with his wife, on the same day, conveyed said premises to demandant. This deed was duly recorded on the day of its date.

That on the tenth of November, 1865, James W. Wade being then dead, the said bank filed a bill in chancery to foreclose said mortgage, and that demandant was made a defendant thereto, and served with a supœna.

That said bill, after stating said deeds, charged as follows : "by virtue of which conveyances, said Joanna Wade claims to have some interest in said mortgaged premises, but complainants charge, that said conveyances were made subsequent to, and with full knowledge of complainants' said mortgage."

That demandant, by her solicitor, entered an appearance in said cause, and on July 13th, 1866, there was a final decree in said cause, to the effect that said bill should be taken as confessed ; that the lands should be sold to pay the mortgave debt, and that the defendants therein should be debarred and foreclosed of all equity of redemption in said lands, &c.

That under an execution issued on said decree, the lands, &c., were sold to defendant, and were conveyed to him by the sheriff, &c.

A replication was put in to this plea, setting forth, that the above mentioned deed from Earl and wife did not in any way come to the knowledge of demandant, until three months after date, and that she did not accept the same.

To this replication there was a demurrer and joinder.

The second plea was, in substance, as follows :

That James W. Wade, February 16th, 1861, and during coverture of demandant, made and delivered to the State Bank at Elizabeth a mortgage on said lands, to secure four thousand dollars which· he owed said bank, and that he afterwards died.

That the mortgage became forfeited for non-payment, and said bank foreclosed the same in the Court of Chancery, and made demandant a party defendant, who was duly served with process, and caused her appearance to be entered by her solicitor.

That a decree final was made in said cause, February 13th, 1866.

That the bill was taken as confessed, the lands sold to pay the mortgage debt, and that it was decreed that defendants should be barred and foreclosed of all equity of redemption therein.

That execution issued on said decree, and under the same the lands, &c., were sold and conveyed by the sheriff to defendant.

To this plea, demandant demurred, and there was a joinder, &c.

The case was argued before the CHIEF JUSTICE, and Justices VREDENBURGH, WOODHULL, and DUPUE.

For the demandant, *W. J. Magie.*

For the defendant, *F. Chetwood* and *B. Williamson.*

The opinion of the court was delivered by

BEASLEY, C. J.   The points which appear to be in controversy between these parties are disclosed in the first of the defendant's pleas.   The replication to that plea cannot be sustained.   Its substance consists of a denial of the acceptance by the demandant of the deed alleged to have been made to her by Earl and wife.   Such denial is not admissi-

Wade v. Miller.

ble, as the demandant is concluded, on that subject, by the record. The case made against the demandant, in the bill in chancery, was this: that the demandant claimed to have an interest, by virtue of this deed, in the mortgaged premises; and it was further alleged, that she took such deed with full knowledge of the mortgage of complainant. This bill was taken as confessed, and a decree made in conformity with the implied admissions on the part of the demandant of the truth of the statements contained in the pleadings. The admission on the record, therefore, by the demandant, that she had taken this conveyance with knowledge of the complainant's mortgage, and that she claimed an interest under it, cannot be contradicted by her in the form of an allegation that she never accepted the deed. Upon this point she is concluded by the record, and, consequently, the answer to the plea is bad.

But the demurrer to this replication opens to the scrutiny of the court the case made by the declaration; and it was to that case that the argument which took place at the bar related. The legal merits of the controversy are thus thrown open to consideration. The points of view in which they were presented by counsel will be first noticed.

The proposition of the counsel of the demandant was this: that the right of dower of the demandant was prior and paramount to the estate created by the mortgage executed by her husband alone to the bank at Elizabeth, and that such right of dower did not merge in the title which she afterwards took to the equity of redemption, for the reason that the estate of the bank—the mortgagee—stood between the right to dower and such subsequently acquired title. To this proposition, the counsel of the defendant answered, that, assuming this theory to be correct, still the demandant was precluded from taking advantage of it, inasmuch if such right existed in her, she was bound to present it in the foreclosure suit, and that all her claims to, or interests in the property were cut off by the decree in the Court of Chancery. The effect of this insistment of the defendant is, that the de-

Wade v. Miller.

mandant's rights, such as they might be, must be considered adjudicated and finally disposed of by the proceedings in equity. For the purpose of testing the correctness of this proposition, we must, for the present, assume that the right of the widow to dower remained separate and distinct from the interest she acquired in the equity of redemption. The question then is, did the decree in the Court of Chancery affect the demandant's claim to dower, viewed as an independent substantive right in the land?

The bill of complaint was in the ordinary form, for the purpose of foreclosing a mortgage. It made the demandant a party, and stated that after the execution of the complainant's mortgage, the husband of the demandant, who was the mortgagor, conveyed the premises to one Earl, who immediately, by his deed, passed the title to the demandant. The charge in the bill was, that, by virtue of these conveyances, the demandant claimed some interest in the land mortgaged. The demandant, by not answering, confessed these facts, and thereupon a decree passed against her, to the effect that she should be debarred and foreclosed from all equity of redemption in the premises embraced in the mortgage of the complainant. The claim is, that this decree has the effect to cut off, not only the demandant's interest in the premises, which is stated in the pleadings, but also her claim to dower, to which no allusion is made.

This insistment does not seem to me well founded. It is clear, that it is not supported by the language of the decree, for the adjudication is, that the demandant shall be barred and foreclosed of all equity of redemption. Such language is apt and intelligible in its application to her as the equitable owner of the premises; but it is neither apt nor intelligible, if we attempt to give it relation to her rights as dowress. This latter interest being superior to the mortgage title, has nothing in common with a right to redeem the land from encumbrancers who have liens upon it; a decree, consequently, which forecloses such right, is entirely aside from the estate of the demandant as widow.

Wade v. Miller.

The language of the decree being explicit and perspicuous, it is not perceived how it is to be extended to an object which plainly is not comprehended within its terms.

Nor do I think, if we go behind this decree and look into the pleadings, that, applying the usual principles upon which a suit in equity is conducted, any wider effect can be given to this final adjudication. The usual and salutary rule is, that a defendant is not called upon, nor in strictness permitted to set up in the answer matters not embraced in the suit. This is an important regulation, tending to preserve singleness in the subject of litigation. I know of no way in which a defendant can properly put in issue facts which are not charged in the bill or which are not related to such facts by way of being an answer to them. Such alien facts may, indeed, sometimes be brought into the cause, but it must be in some mode which will constitute the defendant the actor with regard to them, so that the original complainant will have the benefit of his answer, under oath, on such branch of the case. These are familiar rules to be found in every treatise on the doctrine of pleadings in equity. Applying them to this case, they clearly show that the plaintiff's claim for dower could have no proper place in this suit in chancery. The bill of complaint was merely to foreclose; not a word in it, so far as is shown, indicates any other purpose. There is no allusion to the widow's dower. This being the frame of the bill, the demandant, as the defendant in equity, could not set up her right of dower. She could not litigate that subject in that suit. If she had advanced such claim in her answer, it would have been mere impertinence, and could have been struck out, on the motion of the complainant. I think no matter can be plainer, than that the complainant was at liberty so to frame his bill, as to exclude from it all question as to the right of the widow as dowress, leaving that question, if such were his pleasure, to be settled in the courts of law, if mooted by her. If this is so it seems an unavoidable corollary that the defendant, in her answer, could not, in any way, aver or allude to the ex-

istence of such rights. And the consequence must be, as the demandant had not the legal competency to claim in her answer, her inchoate right of dower, that the decree in that suit cannot preclude or affect such right. The case of *Lewis* v. *Smith,* reported in 11 *Barb.* 152, and in 5 *Seld.* 502, as confirmed by the Court of Appeals, is much in point. The subject, however, rests so much upon well known general principles, that it is not thought necessary to refer to cases.

The demandant is not estopped by the decree in question from asserting, in a court of law, her right to an estate in these premises, such estate being paramount to. the mortgage which has been foreclosed.

Having thus arrived at the conclusion that the demandant's rights have not been settled or concluded by the decree, it remains to ascertain the character of such rights, as they appear on the record now before the court.

It is admitted that the demandant would have been entitled to dower in this land, if it was not for the acquisition by her of the equity of redemption, which was conveyed to her by Earl and wife, who had received it from her husband. The point at issue, as presented on the argument, is, whether the right to dower became merged, upon meeting, in the demandant, this equity of redemption. On the part of the demandant it is contended that such merger did not take place, because the estate vested in the Bank of Elizabeth, by virtue of the mortgage to it, was inter-placed between the estate of dower and the equity of redemption. There is no doubt, that in order to admit of the annihilation of the lesser estate in the greater, by way of merger, there must be an absence of any intervening estate between the two. An intermediate vested estate will prevent the merger.

The proposition, therefore, to be decided is, whether an estate of a mortgagee in fee is an estate within the meaning of this rule.

Certainly it is not to be denied, that the interest of the mortgagee in the land embraced in the conveyance to him, has, under the effect of judicial determinations, come to be

of a most anomalous character. Except in questions arising between him and the mortgagor, or his assigns, the interest of the mortgagee appears to have lost every quality of an estate. Such an interest will not make the mortgagee a freeholder; if he enters and holds the property, he is obliged to account to the mortgagor, as the owner, for the rents and profits; if the money due on his bond is paid to him, his connection with the land is dissolved, for there is no necessity of a reconveyance; and at his death the mortgage interest passes to his representatives as personalty. In these, and in all other particulars, the land seems to be a mere pledge in equity for the payment of a debt. It is true that he may maintain ejectment, and enter upon the possession, but this right springs into existence in a controversy between him and the mortgagor, and even after he enters, he is placed in the attitude of bailiff of the mortgagor, rather than of owner. Such a right, so devoid of all the incidents of property, can scarcely be called an estate in land. But, on the contrary, the interest of the mortgagor carries with it almost all the qualities and concomitants of ownership. The rents and profits of the land are his; he acquires all the privileges incidental to the possession of a freehold; the land can be sold for his debts under execution; his interest in it will support dower and curtesy, and upon his death it descends to his heirs-at-law, unless its distribution as land be regulated by his will. Under such circumstances, "it is," in the expression of Lord Mansfield, "an affront to common sense to say that the mortgagor is not the owner of the property." The decisions in this state have, most assuredly, considered him in this light. In the case of *Montgomery* v. *Bruere*, 1 *South.* 260; *S. C.*, 2 *South.* 865, it was decided that dower was one of the incidents of an equity of redemption. This result was recognized and approved of as law, in *Woodhull* v. *Reid*, 1 *Harr.* 128, and in the opinion delivered in the Court of Errors, in *Thompson* v. *Boyd*, 1 *Zab.* 62, in generalizing the rule upon this subject, it was said: "The mortgagor, and others claiming under him, are considered, both in law

and in equity, as seized and absolute owners of the premises against all others, except the mortgagee and those claiming under him, and in equity against them also, except for the amount due."

The inquiry then arises, if the estate of the mortgagee is not such as to prevent such a seizin in the mortgagor as will annex dower as an incident, how is it that it will intercept two estates, held by the same hand, and prevent them from coalescing? If, in this case, a mortgage had been executed by the husband of the demandant, prior to coverture, she would have claimed, and claimed with effect, that such conveyance of the fee in pledge did not prevent the seizin of her husband of a legal estate of inheritance, and that, notwithstanding the interest vested in the mortgagee, she was entitled to claim as dowress.

Under such circumstances, dower can only be demanded on the assumption that the widow, as between herself and the heir-at-law, can treat with entire disregard every pretence of a legal right in the mortgagee. In the case of *Osborne* v. *Tunis*, 1 *Dutcher* 650, which was decided in the Court of Errors, the question arose as to the effect of a decree of foreclosure on the title to the land, and although it was held that such decree put the estate in the heirs of the mortgagee, who was then deceased, it was not pretended that prior to such event, the title was so vested. Chancellor Green, who expressed the opinion of the court, uses this language: "While the mortgage retains its character of a pledge, of a mere security for the debt, it may be assigned by the executor. It will pass by an assignment of the bond as a mere incident of the mortgage debt. It is regarded as a chattel interest. But when the right to redeem is foreclosed, its character as a pledge ceases, and the title to the land mortgaged vests absolutely, by force of the conveyance, in the mortgagee while living, or in his heir-at-law, if he be dead." We thus perceive that, for every purpose, except so far forth as to enable the mortgagee to effectuate and realize his pledge, the title under the mortgage is passed

by and set at nought. The inquiry, therefore, supervenes, why should it be called into activity in order to hinder the merger of two estates meeting in one person in the same right? It introduces an exception in the doctrine with regard to the legal effect of putting land under mortgage; and exceptions make the law intricate. I think, too, it is contrary to the common understanding of the legal profession. If a tenant, for years or life, purchase in the equity of redemption, I do not believe that it has ever been thought doubtful that such estates become blended, notwithstanding the existence of the title under a mortgage being interposed between them. Suppose a lease made by A to B, for twenty years, and then a mortgage be put upon the land by A, and in the next place the equity of redemption be conveyed to B, the lessee. Upon the death of B, before the expiration of the twenty years, would the leasehold, as a separate estate, kept from merging with the fee, by the intervening mortgage, pass to the prrsonal representatives, while the equity of redemption would go to the heirs-at-law? Such, undoubtedly, would be the result, if we give to the mortgage interest the efficacy claimed for it in this case. I am not prepared to sanction this theory. It does not harmonize with the scheme of policy on this subject, recognized in many adjudications, which has been heretofore adopted. Nor am I able to see any good which would follow its introduction. The doctrine of merger, as applied to the legal titles in common use, by force of our laws, is beneficial in its effects. Its force is to promote convenience in the transmission of land, for it simplifies titles by preventing the continuance of separate interests, generally unnecessary, and sometimes inconsistent, in the same person. I reject, therefore, this doctrine, on the ground that it does not appear to be sustained by any authority which has come to my notice, and as being incompatible with the principles which regulate this branch of our own jurisprudence.

In the foregoing discussion, the question has been considered in the point of view in which it was presented to the

court by the counsel of the plaintiff—that is, as a question of merger. But, upon full reflection, I am led to think that this is not the correct hypothesis. In my judgment this is a case of extinguishment, and not one of merger. To admit of merger, both estates, which, by coming together, cohere into unity, must be vested. I have found no authority for the assumption that an inchoate right of dower constitutes such an estate. All persons are aware that the *status* of the widow with regard to the lands of her husband, before the assignment of her third, is most peculiar. In some respects it is altogether unique. Although the title of dower is perfect on the death of the husband, the title of entry does not accrue until her portion has been set off in certainty, so that it has been said that this affords the only instance in which a title, complete in itself, and unobstructed by any adverse right of possession, does not confer upon the person in whom it resides, the capacity to reduce it into possession. "The dowress," says *Parke, p.* 153, "has no seizin in law, nor can she exercise any act of ownership before assignment." Neither can this inchoate interest be levied upon and sold under execution, nor is it assignable at law. In short, the authorities all agree upon the point, that at this stage of the right of the widow, she has nothing in the land of which an estate "can be predicated," and that such right is a mere chose in action. 1 *Wash. R., p.* 251; 4 *Kent* 61.

When, therefore, the demandant in this case accepted the equity of redemption in the lands in question, this claim—this chose in action—*ipso facto*, became extinguished. From the nature of the interests which were thus conjoined, this was the inevitable product. It was not an act of merger, because the lesser interest was a mere right and not an estate.

Speaking of merger, Preston says: "To call the doctrine of merger into effect, there must, of necessity, be at least two estates. On this head the law is positive; indeed, it is demonstrably clear, that unless there be two estates in the

Wade v. Miller.

same person, in the same land, there is not any estate. in that person to merge, or occasion a merger. A *mere* right or *title* will not suffice." 3 *Prest. on Con.* 55. But, I think, although no merger took place, on account of the lack of a sufficient interest in the premises, that by the junction of the fee with that interest, her right of action for dower was extinguished. This result seems plain, when we consider that, by becoming possessed of the equity of redemption, there was no person left, against whom the widow could maintain her action for dower. She, herself, became the tenant of the freehold, and it was only against a person possessed of such character that her suit would lie. Nor was there any means by which her dower could be assigned to her. Consequently the demandant destroyed, by her own voluntary act, her right of action. The point does not appear to have received any distinct illustration from modern authority, but analogous principles are to be found in the old books. Thus, in *Perkins* 350, this doctrine, here broached, is clearly shadowed forth. The proposition is thus stated : " If a woman takes a lease for life, after her husband's death, she shall have no dower, because she cannot demand it against herself." It will be perceived that the reason for the exclusion from dower, here given, applies with equal exactness to the facts of the present argument. An anonymous case, in *Dyer* 351, was this : husband and wife were tenants in special tail. The husband levied a fine to his own use, and afterwards devised the lands to his wife for life, rendering rent, the remainder over ; the wife entered and paid rent, and it was held her dower was extinguished. This decision went on the ground that the estate the widow voluntarily took in the land was inconsistent with a claim of dower on her part. Also in *Butler & Baker's* case, 3 *Lev.* 271, it is said : " If a woman entitled to dower accepteth homage of the ter-tenant, the same is a bar of her dower." For further illustrations among the ancient authorities, see *Co. Litt.* 33 *a ; Perkins* 69, *d.* The case of *Elwood* v. *Klock,* 13 *Barb.* 50, sheds a light, though somewhat faint,

upon the subject, and so far as its analogy extends, is in favor of the doctrine above propounded.

In my consideration of this subject, I was at first inclined to think that the rule which, to some extent, prevails in the doctrine of merger, that the lesser estate will not be absorbed in the greater, unless it appears that such result was designed by the person receiving it, could be applied to cases of the extinguishment of the rights of action. But against the adoption of such a theory there seems to exist an insuperable difficulty, viz., that when the conjuncture exhibits an instance of extinguishment, there is no circumstance from which an intention to keep alive the right of action can be inferred. Where the holder of the equity of redemption, not being the mortgagor, purchases the mortgage debt, and retains the deed, refraining from cancelling it on the record, it is obvious, from the conditions of the case, that there is no conclusive demonstration of an intention to destroy the mortgage estate. The circumstances of the transaction leave the intention on this point in doubt, and hence, if the separate existence of both estates be to the advantage of the purchaser of the mortgage interest, an intention to preserve the existence of both such estates will be implied in his favor, and a merger will not occur. Such has been the ruling in several cases before this court. *Woodhull* v. *Reid*, 1 *Harr.* 128 ; *Duncan* v. *Smith*, 2 *Vroom* 329.

But it should be observed, that the rule thus recognized is not founded on any secret or undisclosed intention of the person interested ; on the contrary, it is always rested on an intention to be deduced from the facts of the case, and where such facts do not exist the rule does not apply. If the owner of an equity of redemption should acquire the mortgage title, and should then cancel it upon the record, no circumstance would remain from which an inference could be drawn of an intent to keep alive such estate, and, consequently, a merger would inevitably be effected. And this is precisely the condition of the present case, and of all other cases where, by force of circumstances, an extinguishment of a right of action.

obtains. If, in the case now before us, the demandant, when she accepted the equity of redemption, intended to preserve her action of dower, such intention was not demonstrated, either by any act on her part, or by the qualities or facts of the transaction. All parts of her conduct were inconsistent with her present claim of dower; and under these circumstances, there is nothing on which an inference in favor of a design to save such claim can be based.

My general results are, that the first plea discloses facts showing that the demandant's cause of action was extinguished. Such plea is, therefore, a good bar; and as the replication is not sufficient as an answer to it, the demurrer to that replication must be sustained. The second plea, which is founded exclusively on the proceedings and decree in chancery, and which does not state any facts showing that the demandant has waived her dower, is not sufficient in substance; and the demurrer to it is well taken.

. Justices VREDENBURGH, WOODHULL, and DEPUE concurred.

CITED in *Wilson* v. *Kirkbride*, 12 *C. E. Gr.* 95.