JOHN F. SHANNON and MARY J. C. GINNOCHIO

v.

DANIEL C. WATT.

[Submitted August 14th, 1916.   Decided October 17th, 1916.]

1. Rights of curtesy and dower are favored in the law and will not be extinguished except by unequivocal words.

2. Where a decree of divorce *a mensa et thoro* contained a requirement that the husband would release his curtesy in the property of his wife on demand, after the death of the wife her heirs could not enforce such action by him, the obligation being personal between the parties.

On motion to strike out bill on the ground that it discloses no cause of action.

*Mr. Marshall Van Winkle,* for the complainants.

*Messrs. Runyon & Autenreith* and *Mr. Walter L. McDermott,* for the defendant.

GRIFFIN, V. C.

This case presents for solution the question, Did the defendant, in the lifetime of Mary J. Watt, his wife (now deceased), do that which should lead a court of equity to decree that he release his estate by the curtesy to the complainants as devisees under her will?

The complainants base their claim upon the will of Mrs. Watt and an agreement entered into between husband and wife pending a suit brought by the wife in the supreme court of the State of New York for a divorce *a mensa et thoro,* which agreement is evidenced by the decree of that court entered by the consent of the parties.

By the will of Mrs. Watt, executed October 30th, 1914, she devised to each of the complainants in severalty certain lands, and in a residuary clause devised the remainder of her lands to them as tenants in common. The name of the defendant is not mentioned in the will, nor is there any expression in it of an intent or desire that the devisees should take freed from the estate by the curtesy of her husband.

The bill clearly states facts which entitle the husband to his estate by the curtesy, unless the proceedings had in the supreme court of New York require its divestiture.

An examination of the findings of fact and conclusions of law and the decree annexed to the bill discloses that Mary Jane Watt (the testatrix) commenced an action in the supreme court of the State of New York, in and for New York county, against her husband, the defendant here, for a divorce from bed and board; the husband defended; in the course of the trial, and before its termination, the parties reached an agreement which

is embodied in the findings of fact upon which the conclusions of law and the decree subsequently made are based.

Of the several findings of fact, the one found by the court, which is pertinent in this case, is as follows: ·

"VI. That the defendant promised in open court to pay to the plaintiff the sum of fifteen dollars ($15) per week, for her support and maintenance during her natural life, and to release his interest as tenant by the curtesy in all her real property, as well in that she now has as in any that she may subsequently acquire, and to execute any and all instruments and conveyances which may be necessary to carry into effect such releases of such interest, whenever he may be requested by plaintiff so to do."

The conclusion of law founded on the foregoing finding is:

"II. That the plaintiff is entitled to the sum of fifteen dollars ($15) per week for her support and maintenance during the remainder of her natural life, to be paid by the defendant herein, together with the costs and disbursements of this action, and to have executed by the defendant, now or at any future time, when the same may be requested by plaintiff, any and all instruments, which will convey, transfer and release any and all interest which said defendant now has or in future may acquire as tenant by curtesy in any real property of said plaintiff, and that she have judgment accordingly."

The decree entered upon the foregoing findings of fact and conclusions of law is dated June 2d, 1908. In one paragraph the defendant is ordered to pay the alimony, $15 a week, at the foot of which is the following: "Such payments not to be in lieu of her right of dower in defendant's real estate"—thereafter, it is "ordered, adjudged and decreed that the defendant release his interest as tenant by the curtesy in the real property of the plaintiff and execute all instruments and conveyances necessary to carry out such release of said interest, and that he release whatever interest he may subsequently acquire as such tenant by the curtesy in any property which plaintiff may hereafter acquire, and execute any instruments necessary to effect such release, whenever he may be requested by the plaintiff so to do."

The decree concludes with the following: "Ordered, adjudged and decreed that either party may apply to this court for further

order or direction in the premises at the foot hereof as may be just and reasonable."

The defendant fully complied with the terms of the decree down to the date of his wife's death. He paid the alimony as therein directed; and, on June 9th, 1908, at the request of his wife, executed two deeds of conveyance to one Michael J. Burke, conveying his interest or estate by the curtesy in the real property which she was then seized of, for the consideration of one dollar. These deeds were delivered to the attorney of Mrs. Watt, who, in turn, delivered them to Mrs. Sheridan, her sister, who held them down to the month of October, 1911, during which time Burke was unaware of the conveyances, and they were not delivered to him.

On October 23d, 1911, Burke and wife conveyed to Mrs. Sheridan, who, as alleged in the bill, held the same for the said Mary J. Watt. On June 20th, 1913, Mrs. Sheridan died, leaving a will, in which she bequeathed the property which theretofore had been conveyed to her by Burke, and other property, to her sister, Mary J. Watt, in whom the legal estate in fee vested and so continued down to the date of her death, on December 18th, 1914.

Thus, Mrs. Sheridan held the legal estate in fee for the use of Mrs. Watt from October 23d, 1911, until the date of her death, in that part of the real estate in question which had been conveyed to Burke; and from the death of Mrs. Sheridan, on June 20th, 1913, to the death of Mrs. Watt, on December 18th, 1914, covering a period of about eighteen months, Mrs. Watt was seized of an estate in fee in the lands mentioned in the bill, and, although so seized, she never requested her husband to execute deeds, releases or other conveyances under the right conferred upon her by said decree; and the defendant never executed any such instruments.

After the death of Mrs. Watt her devisees requested the defendant to execute such instruments, in alleged compliance with the agreement, with which request the defendant refused to comply.

In this situation, on September 15th, 1915, the defendant instituted three actions of ejectment in the supreme court of this

state against the complainants to recover possession of all the real property mentioned in the bill, alleging that he is entitled to an interest or estate by the curtesy therein; whereupon the complainants filed their bill in this court, with innumerable prayers for relief, including prayers that the defendant may be directed to convey his estate by the curtesy, and for injunction against the prosecution of the suits at law.

Taking the bill in its entirety, the determination of the question propounded at the opening of this opinion will practically dispose of every issue and prayer in the bill.

Assuming for the purposes of this case that the agreement alleged to be evidenced by the decree could have been enforced by the wife in her lifetime, this question arises, Are the complainants, her devisees, vested with a similar right?

The agreement does not, in express terms, give to the heirs or devisees of the wife any rights thereunder. These are limited to the wife only; therefore, such rights, if any, must arise by implication.

The rights of curtesy and dower are favored in the law. Neither husband nor wife will be excluded from rights in the property of the other springing from the marital relation except by words that leave no doubt of the intention so to do. *·Cushing* v. *Blake, 30 N. J. Eq. 689 ('697)* ; *Radley* v. *Radley, 70 N. J. Eq. 248; Freeland* v. *Mandeville, 28 N. J. Eq. 559 (563)*.

Construing this alleged agreement in the light of the rule thus stated, how can the complainants prevail?

By the terms of the agreement, the husband promised to convey whenever he might be requested by the wife so to do. In the agreement (evidenced by the findings of fact, conclusions of law and the decree) there is nothing indicating that the husband should lose his estate by the curtesy, otherwise than by his conveyance (or, possibly, upon a failure to comply with the request of his wife to convey), or that he should convey until requested by his wife so to do, or that his promise was intended to inure to the benefit of the heirs or devisees, or that they should have the power to request or exact performance of this promise. What valid reason can be urged to justify the court in construing this agreement as if the promise ran to the wife and her heirs and

devisees? In view of the language of the agreement, and the relations of the parties, I can see none. On the contrary, considering that the parties continued to be husband and wife, notwithstanding the decree, and the difficulties which she would encounter in attempting to convey without the consent of her husband, is it not apparent that the intent of the agreement was that she should have such dominion and control over her own property that she could convey at will and compel her husband to join in the conveyance, and take the proceeds to her own use? This theory seems to find support in the clause saving her dower in her husband's real estate. If it was the intent that the husband should not have curtesy in the wife's estate, why was not a clause excluding it inserted in the decree?

This suggestion is not made on any theory that the clause was necessary to save her dower; but as estates in dower and curtesy vest after the death of the owner of the fee, and the minds of the parties turned to this subject, it would seem quite as natural, if such was the intent, that the framers of the decree would insert as well a clause divesting curtesy as one saving dower. This would seem to lead to the conclusion that the parties intended only to give to the wife an option to divest her husband of curtesy, whenever she, by a request to convey, elected so to do. This also seems to have been the view of the parties, for, within six days after the decree was signed, she did request, and he did convey.

But whether, on a strict construction of the contract, it is determined that the agreement does not inure to the benefit of the devisees, and they cannot make the request and enforce the agreement, or the meaning of the parties cannot be ascertained from the whole agreement with reasonable certainty, complainants must fail. *Cushing* v. *Blake, supra; Radley* v. *Radley, supra; Freeland* v. *Mandeville, supra.*

This case is clearly distinguishable from that of the *Appeal of Scott, 147 Pa. St. 102; 23 Atl. Rep. 214,* where the court decreed that the widow was not entitled to share in the estate of her deceased husband. In that case, it seems that while proceedings for a limited divorce were pending an agreement was

entered into between the husband and wife in such language that it was made plain to the court that the wife released not only to her husband, but to his heirs, executors and administrators.

While this case has been considered as if a binding agreement was created by the proceedings leading up to the decree in the New York supreme court, I do not deem it necessary to determine whether an agreement was in fact created, which might, as such be enforced by the wife in her lifetime in the courts of this state. *Bullock* v. *Bullock, 52 N. J. Eq. 561; Van Orden* v. *Van Orden, 58 N. J. Eq. 545.* Nor is it necessary to consider the other points argued by counsel, in view of the conclusion reached.

A decree will be advised striking out the bill.