9 N.J. Super. 389 (1950)
74 A.2d 910
KATHERINE CAROLINE SKOVBORG, INDIVIDUALLY AND AS EXECUTRIX OF THE LAST WILL AND TESTAMENT OF ANDREW SMITH, DECEASED, PLAINTIFF,
v.
SIGRID SMITH, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 12, 1950.
*391 Mrs. Matilda G. Neefus-Palmer for the plaintiff (Messrs. Moffitt & Neefus, attorneys).
Mr. Harold N. Gast for the defendant counterclaimant (Messrs. Wight, Jorgensen & Gast, attorneys).
JAYNE, J.S.C.
I was heretofore requested to construe the last will and testament of the late Andrew Smith. My conclusions were expressed in an opinion reported in 8 N.J. Super. 424, 72 A.2d 911 (Ch. 1950). I resolved that the testator's sister Mathilde Marie Smith was entitled to the income of the trust and in the event that the income was insufficient to maintain her in her usual station in life, the trustee was clothed with authority to withdraw and pay to her suitable monthly installments from the corpus, and that the testator died intestate as to any remainder of the corpus.
The statement of a few supplementary facts will reveal the subject of the interesting question now presented for decision.
The will was executed on October 11, 1921, at which time the testator was unmarried. On September 2, 1935, he married. He died on March 18, 1949, seized in fee simple of a residential property. He had no issue, but his widow survives.
The widow by means of a counterclaim against the plaintiff executrix-trustee, the life tenant in possession, and all other occupants of the premises, has sought the assignment of dower in the real estate and damages for its tardy admeasurement, and now prays for summary judgment.
In the circumstances of this case the widow receives the estate in remainder in the realty as the "statutory heir" *392 pursuant to R.S. 3:3-4, N.J.S.A., as am. L. 1941, c. 153, p. 508, § 1.
The widow's counterclaim is resisted by the contention that there was a merger of her dower in the remainder of the corpus which she takes by way of the statute.
The proposition is of the latest fashion. It sprouts from the relatively recent legislation which has qualifiedly made a surviving spouse an "heir" of the deceased spouse. Cf. Reese v. Stires, 87 N.J. Eq. 32, 103 A. 679 (Ch. 1917).
Traditionally the law has had its ardent attachments and its inveterate antipathies. Since very early times dower has been highly esteemed in the law. The origin of dower is so ancient that neither Coke nor Blackstone were able to trace it. Blackstone's observations are recorded in 2 Bl. Com. 129. We know that dower was recognized in Magna Charta in 1215 and that as early as 1641 Lord Bacon was heard to speak of "life, liberty and dower" as a "common byword." Bacon, Uses, p. 37.
I need not labor the point because it is to be acknowledged that in our jurisdiction dower continues to have the protective auspices of the law.
The principle that neither husband nor wife will be excluded from rights in the property of the other springing from the marital relation except by words that leave no doubt of the intention so to do, has become proverbial in our Chancery decisions. Freeland v. Mandeville, 28 N.J. Eq. 559 (Ch. 1877); Cushing v. Blake, 30 N.J. Eq. 689 (E. & A. 1879); Radley v. Radley, 70 N.J. Eq. 248, 62 A. 195 (Ch. 1905); Shannon v. Watt, 87 N.J. Eq. 142, 99 A. 114 (Ch. 1916); affirmed, 87 N.J. Eq. 611, 101 A. 251 (E. & A. 1917); Havranek v. Dragoun, 1 N.J. Super. 386, 65 A.2d 105 (Ch. Div. 1948).
The alertness for the safety of dower is also conspicuously present in the Legislature. An act passed in 1782 directing descents expressly declared that the enactment should not in any wise affect dower rights. Our present statute (R.S. 3:3-15, N.J.S.A.) provides: "Nothing in this chapter shall *393 be construed or taken to bar or injure the rights or estate of a husband or a widow under curtesy or dower or to make void or in any way to affect any marriage settlement."
I am attentive to the decision in Kicey v. Kicey, 112 N.J. Eq. 459, 164 A. 684 (Ch. 1933), in which the learned Vice-Chancellor remarked (on p. 464): "No conflict or inconsistency existed between the operation of the law as to dower or curtesy and the operation of the law as to devise or intestate succession. If a spouse having a right of dower or curtesy became vested with the fee by devise or intestate succession, the former became merged in the latter."
On appeal the Court of Errors and Appeals acquiesced: "It is true that the 1926 statute operates beneficially to the surviving spouse, who also would benefit by dower or curtesy as the case might be; but there is no more conflict therein than there is in the numerous instances where a wife or a husband is a devisee of the other. The lesser estate simply merges in the greater." 114 N.J. Eq. 116, 119, 168 A. 424 (E. & A. 1933).
I immediately concede the rationalism of those quotations in their relevancy to the situation in the Kicey case, but I must disaffirm their application to the circumstances of the case sub judice.
Fundamentally I am unable to concur in the assumption that unassigned dower is an estate. The status of a widow intermediate the death of her husband and the assignment of her dower is peculiar and in some respects unique. Her dower interest before assignment is authentically a "right," "benefit," "privilege," "inchoate expectancy," and "chose in action," and assuredly lacks the essential qualities of an estate. Wade v. Miller, 32 N.J.L. 296, 306 (Sup. Ct. 1867); Tenbrook v. Jessup, 60 N.J. Eq. 234, 46 A. 516 (Ch. 1900); Morris v. Glaser, 106 N.J. Eq. 570, 608, 151 A. 760 (Ch. 1929); cf. Pellitteri v. Mancuso, 136 N.J. Eq. 323, 41 A.2d 814 (Ch. 1945).
It seems therefore to be demonstrably clear that unless there be two estates in the same person, in the same land, *394 there is no basis for a merger. Circumstances are conceivable whereby, for example, the widow voluntarily acquires the fee and thus extinguishes her right of action for dower. This results not because two estates cohere in unity, but because having become possessed of the fee there is no person against whom the widow can maintain her action for dower.
An important contrastive distinction between this and the Kicey case is that in the present one there exists an intermediate life estate. The absence of an intermediate estate is mentioned as an essential element in all the authoritative common law definitions of merger. 2 Bl. Com. 177; 19 Am. Jur. 588.
In Wade v. Miller, supra, Chief Justice Beasley stated (on p. 302): "There is no doubt that in order to admit of the annihilation of the lesser estate in the greater, by way of merger, there must be an absence of any intervening estate between the two. An intermediate vested estate will prevent the merger."
But additionally there are equitable considerations implicated in the present situation. Merger is not favored in equity. Morgan v. Murton, 131 N.J. Eq. 481, 488, 26 A.2d 45 (Ch. 1942). It is not allowed unless for special reasons. It is largely a question of intention and not an imperative consequence of an inflexible rule. Barry, Inc., v. Baf, Limited, 3 N.J. Super. 355, 65 A.2d 761 (Ch. Div. 1949); 19 Am. Jur. 589, § 136.
It has been held that where a merger is not beneficial to the person in whom two estates are vested, an intention that there shall be no merger will be inferred. 143 A.L.R. 93, 115.
The Supreme Court of Pennsylvania in 1889 was concerned with a case in which a widow held dower in lands, the fee to which descended to her by the death of her son. It was resolved that the merger of the two estates was a question of intent, and would not take place against the wishes of the widow. Danhouse's Estate (Appeal of Fink), 130 Pa. 256, 260, 18 A. 621. Other Pennsylvania decisions sustaining the *395 same equitable principle are Miller v. Griffith, 112 A. 52 (Pa. Sup. Ct. 1920), and Hurst v. Spotts, 294 Pa. 221, 144 A. 91 (Pa. Sup. Ct. 1928).
With an equitable outlook I ascribe some practical significance to the fact that the widow receives nothing under the testator's will. The will was executed by him before his marriage. If upon the termination of the trust and the fulfillment of its purposes the entire estate is not exhausted, the balance or remainder will pass to the widow by intestacy. The trustee and the cestui, however, are sisters, and they are at present occupying the dwelling. The trustee is empowered by the will "if she deems it to the best interest of my estate then to sell at either public or private sale all of my estate both real and personal * * *." The trustee is authorized in her discretion to devastate the corpus in order to provide suitable maintenance for her sister, with whom she herself resides. The eventual value of the interest of the widow in the remainder is more imaginable than visible. A merger will not be decreed.
Dower and curtesy have their inception not in seizin alone but in seizin coupled with coverture. Alt v. Kwiatek, 128 N.J. Eq. 469, 471, 17 A.2d 161 (Ch. 1941); Campbell v. Campbell, 140 N.J. Eq. 144, 155, 53 A.2d 630 (Ch. 1947). The dower interest of this widow is defined by R.S. 3:37-1, N.J.S.A.
The widow demands damages resulting from the apathetic attitude of the executrix and the life tenant toward the assignment of the dower. It is asserted in opposition that the widow has never made any demand for its assignment.
A few words of an historical aptitude occur to me. I believe that damages for the detention of dower were not recoverable at common law and became recoverable only after the enactment of the statute of Merton in the twentieth year of the reign of Henry III. McLaughlin v. McLaughlin, 20 N.J. Eq. 190 (Ch. 1869); reversed on other points, 22 N.J. Eq. 505 (E. & A. 1871).
*396 Under the English statute of Merton, the heir might appear in an action of dower unde nihil habet and plead that he was always ready (tout temps prist) to assign the dower and thus prevent the recovery of damages unless it appeared that the widow had made a vain demand. Not so under our statute which is presently found in R.S. 3:38-1, N.J.S.A. See Hopper v. Hopper, 22 N.J.L. 715 (E. & A. 1850).
"To entitle a dowress whose husband died seized, to mesne profits, no demand of dower is necessary. The statute, in such case, makes it the duty of the heir to assign dower within forty days after the death of the husband, without demand, and if he fails to do so, the widow is entitled to mesne profits." Shields v. Hunt, 39 N.J. Eq. 485, 490 (Ch. 1885).
The recovery of a widow for a dereliction in the assignment of dower is uniformly characterized in the books as damages; it is in a pragmatical sense an accounting.
Here the widow vacated the residential property almost immediately after her husband's death. The trustee acquired the legal title and has retained possession of the property for the use of the life tenant. The widow is entitled to the fruits of her dower interest in the property from the tenant in possession from the date of her husband's death. Shields v. Hunt, supra; Tarrant v. Carrig, 99 N.J. Eq. 605, 607, 133 A. 522 (Ch. 1926).
It is assumed that the residential property is not physically divisible and that dower must therefore be otherwise assigned. The following decisions are informative. Burton v. Mellis, 75 N.J. Eq. 10, 72 A. 13 (Ch. 1909); Bahr v. Cooper, 141 N.J. Eq. 584, 58 A.2d 604 (Ch. 1948).
Presumably the widow's share of the rental value of the premises after allowable deductions will not be substantial. Perhaps counsel can agree upon the accounting, otherwise further proof in that particular will be required.
Judgment accordingly.