On the passing of the receiver's account, application was made for counsel fee for the solicitor of the complainant. Certain facts in connection with this cause indicating unprofessional conduct on the part of the solicitors having been previously brought to the court's attention, decision was reserved pending examination and report by a special master to whom the matter was referred. His report, on file, discloses the following astounding state of facts: *Page 332 
The solicitors of the complainant and the defendant composed the law firm of Ehrenkranz Kay. The defendant company was incorporated in their office and was never represented by any other counsel. In July, 1928, Ehrenkranz Kay obtained a default judgment in the second district court of the city of Newark against the defendant on a claim of something less than $100 for services and assigned it, without consideration, to the complainant, Rose Ertag, a stenographer in their office. This bill was then filed by Mr. Ehrenkranz, as solicitor of the complainant, and Vice-Chancellor Church issued an order to show cause returnable before me. On the return day an answer of the defendant company admitting insolvency and consenting to the appointment of a receiver, signed by the president and secretary of the company and under its seal, and signed also by Mr. Kay, as solicitor of the defendant, was filed with me and a receiverselected by the court was appointed. It appears by the testimony taken before the master that the sole parties in interest in the defendant company are the two Cavallos, father and son, who speak and understand very little English. They deny that they were indebted to Ehrenkranz Kay in any sum and deny any knowledge of the proceedings in the district court although the summons indicates that it was served personally on one of them. Upon service of the order to show cause for the appointment of a receiver in this cause, the Cavallos called at Mr. Ehrenkranz's office and were advised that the proceeding was necessary for their protection and that it would be necessary for them to procure counsel, and he recommended Mr. Kay, who, after having them sign an agreement to pay him a $250 counsel fee, filed a ten-line answer. The preparation and filing of the bill by Mr. Ehrenkranz, the preparation of the order to show cause and the order appointing receiver constituted the total service of Mr. Ehrenkranz as solicitor for complainant; and the preparation and filing of the answer admitting insolvency constituted the sole service by Mr. Kay. The application for counsel fee for Mr. Ehrenkranz as solicitor of the complainant was made in opencourt by Mr. Kay, who recited in detail Mr. *Page 333 
Ehrenkranz's services. Such of these facts as were then within the knowledge of the court were called to Mr. Kay's attention and were admitted by him. Ehrenkranz Kay justify their course of conduct by asserting that at the time the bill of complaint was filed they had dissolved partnership. This, of course, is immaterial, but the facts indicate the contrary. They still occupy the same offices, have the same assistants, books of account, c., and no notice of dissolution of the partnership was ever given to the public. An inspection of the files now discloses that the original bill of complaint is signed "Samuel Ehrenkranz, Ehrenkranz Kay, solicitors for and of counsel with the complainant, Harry Kay, of counsel." Ehrenkranz is not a counselor and neither he nor the firm should have signed the bill as counsel. Moreover, the affidavit attached to the bill is sworn to before Kay, who signed the jurat "Harry Kay, a Master in Chancery of New Jersey." That this was improper is elementary. Kay does not explain why he signed the bill as counsel for complainant and the answer as solicitor and counsel of the defendant. Aside from his personal interest in the cause he could not act as solicitor or counsel for both complainant and defendant. Mr. Kay claims he never received the agreed fee of $250 from the defendant. This is immaterial, although the Cavallos both testify that it was paid, and the company's bank records corroborate their testimony. The fact that the solicitor of the complainant and the solicitor of the defendant were the real creditors on whose behalf the application for receiver was made was suppressed and withheld from the court as were practically all of the other details hereinbefore recited. The defendant company was entitled to the loyal and unquestioned fidelity of its solicitors but did not have it because self-interest was the solicitor's first interest. "Counsel fees are only earned by fidelity to, and activity for, a client and his interests." Hoboken Trust Co. v. Norton, 90 N.J. Eq. 314.
No counsel fees or costs will be allowed here. And, by a relentless irony of fate, the partners take nothing by their judgment, it having been entered within four months prior to the filing of the bill (1 *Page 334 Cum. Supp. Comp. Stat. 47-86K p. 680), and the defendant's assets consisting solely of real estate.
It is remarkable that neither of these solicitors is conscious of any wrong-doing, but their conduct in this proceeding cannot be overlooked. It is indicative of what I hesitate to term the decadence of the bar, and sounds a sad note in the progress of time. Such conduct and such suppression of facts are derogatory of the authority and dignity of the court, and are contemptuous and contumacious. They give little promise of a future appreciation of the high standard of honesty and integrity for which our profession has always been noted. The commercializing tendency of recent years requires strict application of the rules of right conduct by members of the bar to the end that the honor and respect of the profession, both within and without, be maintained. I find both solicitors guilty of contempt of court. Their conduct warrants their suspension as solicitors of this court, but for the present, action to that end will be deferred.