This is a foreclosure suit in which the mortgaged premises have been sold pursuant to a final decree. The matter now comes before me on the return of an order to show cause why the final decree should not be opened and amended, issued on the petition of two infant defendants, one of whom has attained his majority since the final decree and foreclosure sale. For a correct understanding of the present application it is necessary that the previous proceedings be recited in detail.
The complainant was the holder by assignment of an $18,000 mortgage dated July 23d 1906, executed by one Simon Glaser and covering property located in Long Branch, New Jersey. Simon Glaser was the husband of the defendant Sarah Glaser, and the father of the defendants Harry *Page 572 
Glaser and the minor defendants Max Glaser and Jeannette Glaser. He died intestate in 1918. This bill to foreclose complainant's mortgage was filed in this cause on August 21st, 1926. The complainant is a member of the bar of this state but the bill was filed in his behalf by his son, Langdon E. Morris, who is also a member of the New Jersey bar. In addition to the Glaser defendants the following holders of subsequent encumbrances on the mortgaged premises were made parties defendant:
1. Long Branch Banking Company, assignee of a mortgage executed by Simon Glaser, dated July 23d 1906, in the sum of $5,500, the principal of which at the time of the filing of the bill herein had been reduced to $4,100.
2. John H. Davis, Jr., president of Citizens National Bank of Long Branch and Harry B. Sherman, Jr., president of Long Branch Banking Company, holders of a mortgage for $50,000, executed by the defendants Harry Glaser and Sarah Glaser upon the widow's interest in dower and the undivided one-third interest of the defendant Harry Glaser in the same premises covered by the preceding mortgage. Each of the two defendant banks had an interest in this mortgage to the extent of $25,000 as security for loans, the proceeds of which were used in the improvement of the premises in question.
3. Southern Lumber Company, the holder by assignment of a mortgage in the sum of $25,079, executed by the defendant Sarah Glaser, widow, and Harry Glaser on their respective interests in the premises in question. The proceeds of this mortgage were likewise expended in the improvement of the mortgaged premises.
4. Henry Bruml Company, a judgment creditor, holding a judgment in the New Jersey supreme court against Sarah Glaser and Harry Glaser for the sum of $942.40, entered on December 8th, 1925.
5. Daniel E.C. Somers, a judgment creditor who held a judgment against Sarah Glaser, administratrix of the estate of Simon Glaser, deceased, Sarah Glaser and Harry Glaser individually, in the sum of $1,099.10, recovered in the New Jersey supreme court on May 21st, 1926. *Page 573 
6. Benjamin Bragar, a judgment creditor who held a judgment in the sum of $653.28 entered in the Monmouth county common pleas court against the defendant Sarah Glaser in April, 1925.
All the various encumbrances held by these defendants were charged in the bill to be subsequent and subject to the lien of complainant's mortgage, as in fact they were.
Service of subpoena on Max Glaser and Jeannette Glaser, the infant defendants, was had by service upon their mother, the defendant Sarah Glaser, and afterwards, by appropriate proceedings, the clerk of this court was appointed guardian adlitem for these infant defendants. Service of the subpoena was acknowledged on behalf of all the other defendants by their respective solicitors, the complainant Benjamin P. Morris acknowledging service of the subpoena for the defendants Sarah Glaser, Harry Glaser, Long Branch Banking Company, John H. Davis, Jr., President; Citizens National Bank, Long Branch Banking Company and Harry B. Sherman, Jr., president of Long Branch Banking Company. (Reference will be made to this unusual circumstance hereafter.) None of the defendants filed an answer to the bill but all of the subsequent encumbrancer defendants, except the Henry Bruml Company, filed notices to have their respective encumbrances reported upon, the complainant filing such notices on behalf of the defendants John H. Davis, Jr., Citizens National Bank, Harry B. Sherman, Jr., and Long Branch Banking Company. These latter notices were addressed "to the complainant Benjamin P. Morris or his solicitor Langdon E. Morris, Esq.," and were signed "Benjamin P. Morris, solicitor for the defendants," c. A decree pro confesso against all of the defendants was entered in this cause on January 17th, 1927, and the matter was referred to a special master of this court to ascertain and report the amount due to the complainant for principal and interest upon his mortgage and also the amount due, if anything, to the complainant and defendants upon their respective mortgages, judgments and other liens, and to report accordingly; and, also, to report the order and priority of the said several *Page 574 
encumbrances. The master reported that he had been attended by the solicitor of the complainant, by Harry B. Sherman, Jr., president of Long Branch Banking Company, by John H. Davis, Jr., president of Citizens National Bank, by David Jacobson, president of Southern Lumber Company, by Harry S. Glaser in person, and that no person attended for Thomas Barber, clerk of the court of chancery, guardian ad litem of the infant defendants, although duly summoned, and, in the presence of the parties attending before him, that he considered the matters referred to him. Prior to the hearing before the master the complainant had acquired by assignment the judgments of the defendants Daniel E.C. Somers and Benjamin Bragar. No one appeared before the master representing the Henry Bruml Company and, as no notice to have its judgment reported upon had been filed, the judgment of that defendant was not considered or reported upon. The master filed his report on March 10th, 1927, reporting the sums shown in the following statement to be due to the respective parties:
To the complainant Benjamin P. Morris on his mortgage and for taxes paid the sum of $22,371.35.
To Long Branch Banking Company on its mortgage the sum of $4,100.
To Long Branch Banking Company on its interest in the $50,000 mortgage above mentioned the sum of $13,500.
To Citizens National Bank on its interest in the $50,000 mortgage above mentioned the sum of $25,000.
To Southern Lumber Company on its mortgage of $25,079 the sum of $26,553.
To Benjamin P. Morris on the judgment of Daniel E.C. Somers purchased by Morris during the pendency of the suit the sum of $1,151.12.
To Benjamin P. Morris on the judgment of the defendant Benjamin Bragar purchased by Morris during the pendency of the suit the sum of $682.35.
The order of priority of the several liens was fixed by the master in the order as stated above, except that the interests of Long Branch Banking Company and Citizens National *Page 575 
Bank under the $50,000 mortgage referred to were reported to be concurrent and equal liens. The master also reported that the first mortgage of $18,000 held by the complainant, and the second mortgage of $4,000 held by Long Branch Banking Company, were liens and encumbrances upon the entire property described in the bill of complaint and upon the interests of all of the Glaser defendants therein; but that the third mortgage of $50,000 held by Long Branch Banking Company and Citizens National Bank, the fourth mortgage of Southern Lumber Company, and the judgment of Daniel E.C. Somers, were liens to the amount found to be due thereon respectively only upon the undivided one-third interest of the defendant Harry Glaser and the dower interest of the defendant Sarah Glaser, and that the judgment of the defendant Benjamin Bragar to the amount found to be due thereon was a lien only upon the dower interest of the defendant Sarah Glaser.
The final decree was entered herein on March 24th, 1927, and it was thereby decreed that there was due to the respective parties the amounts set out in the master's report as above recited, and directed that the mortgaged premises be sold to raise and satisfy the said several sums of money due to the said complainants and defendants, as follows:
In the first place, to the complainant, $22,371.35;
In the second place, to the Long Branch Banking Company the sum of $4,100;
In the third place, to the Long Branch Banking Company jointly with Citizens National Bank of Long Branch the sum of $13,500 out of the interests of Harry Glaser and Sarah Glaser;
In the fourth place, to Citizens National Bank of Long Branch the sum of $25,000 jointly with Long Branch Banking Company, out of the share of Harry Glaser and Sarah Glaser;
In the fifth place, to Southern Lumber Company the sum of $26,553 out of the share of Harry Glaser and Sarah Glaser; *Page 576 
In the sixth place, to Benjamin P. Morris the sum of $1,151.12 out of the share of Harry Glaser and Sarah Glaser;
In the seventh place, to Benjamin P. Morris the sum of $682.35 out of the share of Harry Glaser and Sarah Glaser.
This last direction was obviously in error, as the master reported that the Bragar judgment was a lien only upon the interest of Sarah Glaser. The decree then directed that a writ offieri facias issue accordingly, commanding the sheriff of Monmouth county to make sale of the mortgaged premises for the purpose of raising the said several sums of money and out of the proceeds of said sale to pay the said several sums, together with interest and costs, to the respective parties designated and in the order mentioned. Under date of April 9th, 1927, the writ offieri facias was accordingly issued, directing the sheriff of Monmouth county to sell the mortgaged premises for the purpose of raising the several sums of money mentioned in the decree, without, however, containing any direction as to the interests of the several defendants which were to be sold to raise said several sums. In other words, while only the first and second mortgages were a lien on the interests of all the Glaser defendants, the fieri facias directed that all the interests of all the Glaser defendants be sold for the purpose of raising funds to pay the said several liens and encumbrances without any mention of the fact that none of the encumbrances, excepting the first and second mortgages, were a lien upon the interests of the infant defendants Max Glaser and Jeannette Glaser in the mortgaged premises. Pursuant to the fieri facias the mortgaged premises were sold on June 6th, 1927, by the sheriff of Monmouth county, to the complainant Benjamin P. Morris for the sum of $97,000. This sale was confirmed on June 18th, 1927, and the sheriff's statement filed upon the return of the fieri facias
shows the distribution of the proceeds of that sale as follows:
 Decree for complainant ............................. $22,371.35
 Interest from March 7th, 1927 ...................... 443.69
 Costs taxed at ..................................... 785.66
 Interest from March 24th, 1927 ..................... 13.36
 *Page 577 
 Decree for Long Branch Banking Co. ................. 4,100.00
 Interest from March 7th, 1927 ...................... 81.31
 Costs taxed at ..................................... 9.56
 Interest from March 24th, 1927 ..................... .17
 Decree for Long Branch Banking Company and
 Citizens National Bank ........................... 13,500.00
 Interest from March 7th, 1927 ...................... 267.75
 Costs taxed at ..................................... 9.56
 Interest from March 24th, 1927 ..................... .17
 Decree for Citizens National Bank and Long
 Branch Banking Company ........................... 25,000.00
 Interest from March 9th, 1927 ...................... 495.83
 Decree for Southern Lumber Company ................. 26,553.00
 Interest from March 7th, 1927 ...................... 526.64
 Decree for Benjamin P. Morris ...................... 1,151.12
 Interest from March 7th, 1927 ...................... 23.08
 Decree for Benjamin P. Morris ...................... 682.35
 Interest from March 7th, 1927 ...................... 13.53
 ___________
 $96,028.13
 Sheriff's fees ..................................... 2,024.84
 ___________
 $98,052.97
 Purchase price ..................................... 97,000.00
 ___________
 Deficiency ......................................... $1,052.97

The statement indicated a deficiency of $1,052.97 on the sale. It is clear that in this distribution the interests of the infant defendants in the proceeds of the sale of the premises, over and above the amount necessary to satisfy the amount due on the first and second mortgages, were not considered at all, and the distribution of such surplus, while in strict accordance with the terms of the fieri facias resulted in a gross injustice to the infant defendants. The sheriff, however, is not censurable for this fact, as he merely obeyed the mandate of the court as he was in duty bound to do.
Upon the filing of the petitions of Max Glaser and Jeannette Glaser an order to show cause was made by the chancellor directed to the various parties to the suit requiring them to show cause why the final decree entered herein should not be opened and amended and appropriate relief afforded the petitioners, and, by the same order, the cause was referred to me to hear the same for the chancellor. *Page 578 
Upon the return of these orders to show cause other parties in interest asked for permission to file petitions in the premises, and permission was thereupon granted to all parties to the suit to file petitions for such relief as they respectively claimed to be entitled to, and at the time of granting such permission, I stated that upon the filing of such petitions I would consider the facts alleged therein as a basis for the relief prayed for, and would then decide whether or not, upon those facts, any of the petitioners were entitled to any relief. In addition to the petitions of the infant defendants, petitions for relief have now been filed by Citizens National Bank of Long Branch, John H. Davis, Jr., Long Branch Banking Company, Harry B. Sherman, Jr., Southern Lumber Company and by the complainant Benjamin P. Morris. All these petitions, as well as the accompanying affidavits and the answering affidavits, have now been considered, and the facts upon which the present disposition of this controversy is predicated do not seem to be in substantial dispute. From these facts it appears quite clearly that the master's report, the final decree and the fieri facias all contained some errors which have resulted in injury to the infant defendants.
It seems plain that the master erred in determining the amount due to the complainant for interest on his mortgage. The mortgage provided for interest at five per cent., but the master computed it at six per cent. because the complainant in his affidavit stated that at the time he took an assignment of the mortgage it was agreed that the rate of interest should be increased from five to six per cent. No written agreement to that effect was produced. At that time the mortgagor was dead and it is quite obvious that no such agreement, if made, was binding upon the infant defendants. The master's report, so far as it determines the amount of interest due the complainant, is therefore disapproved and the decree will be amended to correct this error, and also to correct the obvious error in determining that the judgment of the defendant Benjamin Bragar was a lien upon the interests of Sarah Glaser and Harry Glaser in the mortgaged premises. The Bragar judgment was a lien only on *Page 579 
the interest of the defendant Sarah Glaser. Reference to the errors in the fieri facias has already been made.
It was also alleged in the petitions of Max Glaser and Jeannette Glaser that the master erred in finding the amount of principal due to the complainant upon his mortgage, the allegation being that there was only approximately $14,700 of principal due on the mortgage instead of $18,000 as found by the master. But there are no sufficient facts alleged in the petitions and supporting affidavits to justify this allegation and it is completely met by the answering affidavits. These petitioners ask that the entire purchase price of the mortgaged premises be paid into court and be distributed amongst the several parties in interest as their respective interests appear; but, as it seems plain that the complainant and the defendant Long Branch Banking Company were entitled to be paid the full amount of principal and interest reported to be due them by the master on the first and second mortgages (with the exception of the error in the amount of interest on the complainant's mortgage due to a computation at the rate of six per cent. instead of five per cent. as hereinbefore mentioned), and as these mortgages were liens upon the interests of the infant defendants in the mortgaged premises, as well as those of the adult defendants, there would seem to be no necessity for an order requiring the payment into court of that portion of the proceeds of sale received by the complainant Morris and the defendant Long Branch Banking Company on account of these mortgages except in so far as the over-payment of interest is concerned.
There can be no doubt that the petitioning infant defendants are entitled to relief, and it is obvious that that relief can be afforded only by requiring the payment into court of that portion of the proceeds of sale of the mortgaged premises which was in excess of the amount due on the first and second mortgages and, after such payment into court, by an adjudication of the rights of the various parties in interest. An order will, therefore, be entered directing the defendants Long Branch Banking Company, Citizens National Bank of Long Branch and Southern Lumber Company to pay into *Page 580 
court forthwith the amounts which they respectively received from the proceeds of sale herein on account of their respective encumbrances, and in default thereof, directing the complainant Benjamin P. Morris to pay said sums into court, and also directing the complainant Benjamin P. Morris to pay into court the amounts, if any, which he received from the proceeds of said sale on account of the judgments of the defendants Daniel E.C. Somers and Benjamin Bragar and the amount of the difference between the interest on his mortgage to which he was entitled and that which he received. This amount is one per cent. on $18,000 for the period between July 23d 1925, and March 7th, 1927, and is a matter of easy computation. After such payment has been made it will then be necessary to fix the value of the dower interest of the defendant Sarah Glaser and the respective interests of Harry Glaser, Max Glaser and Jeannette Glaser in the mortgaged premises, and in the proceeds of the sale of those premises over and above the amount due on the first and second mortgage; and, as the subsequent encumbrances were a lien only on the interest of the defendants Sarah Glaser and Harry Glaser, the proceeds of the sale of those interests only are to be applied to the payment of such encumbrances. In determining the liability of the defendants Long Branch Banking Company, Citizens National Bank of Long Branch and Southern Lumber Company, in the first instance, and of the complainant secondarily, to pay such moneys into court, it is considered that the present situation is due to the complainant's conduct in this suit, of which more will be said hereafter. These defendants (Long Branch Banking Company, Citizens National Bank and Southern Lumber Company) having received the moneys, are primarily liable for their repayment; but the moneys having been wrongfully paid to them because of the conduct of the complainant, he will be held to be secondarily liable.
As to the petitions filed by the other parties to this suit, I have considered them carefully but find no equity in any of them with the exception of the amended petition of Citizens National Bank of Long Branch and John H. Davis, Jr. *Page 581 
The only equitable relief to which those petitioners may be entitled at this time must be based upon the allegation in that petition of the waiver by Max Glaser of his rights, and of his ratification of the previous proceedings in this cause, after he attained his majority. These petitioners will be permitted, upon the proceeding to determine the rights of the various parties in the fund which is to be paid into court, to present proof of the alleged waiver and ratification, and their petition will be retained for this purpose only.
It is alleged in these petitions that the proceeds of the various subsequent encumbrances of these petitioners were expended in the improvement and enhancement of the value of the mortgaged premises and that, therefore, these encumbrances should be considered as liens against the entire property including the interests of the infant defendants. Obviously this cannot be so because the mortgages and judgments did not purport to be a lien upon the interests of anyone other than the defendants Sarah Glaser and Harry Glaser, and the security of the liens was expressly limited to the interests of these defendants. It was on this security alone that the advances were made, and if this security should now prove to be insufficient, there is no rule of law or equity which will save the petitioners from the fruits of their folly. They have no more right to now grasp at the interests of these infant defendants than they have to claim the property of any other stranger to the transaction as further security against their optimism.
It is also alleged in the petitions of Citizens National Bank and Long Branch Banking Company that the joint mortgage held by them was held as collateral security to numerous promissory notes, and that upon receipt by them of the amounts found by the master to be due to them respectively upon said mortgage, the promissory notes, as collateral to which said mortgage was held, were marked paid and canceled, and that thereby the endorsers or makers of those notes may have been released and discharged. In the original petitions filed by these petitioners it was sought to make those makers and endorsers parties to this proceeding, *Page 582 
and orders to show cause were issued accordingly, but upon the return of those orders the petitions were dismissed by consent as to such makers and endorsers, but without prejudice, and amended petitions were filed in which no relief against the makers and endorsers of said notes was sought. It is obvious, therefore, that no relief on this score can now be granted in this proceeding (although there is no doubt as to the power of the court to dispose of that issue in this cause if properly raised, and the makers and endorsers of said notes regularly brought into court), but it is equally obvious that if these notes were canceled as the result of a mistaken idea that they had been paid, whereas in this proceeding it may appear that they were not, it is possible that appropriate relief might be afforded the holders of these notes upon a bill in equity to reinstate them, but that matter is not now before the court.
Complaint is also made by these two petitioners (Citizens National Bank and Long Branch Banking Company) that their rights were prejudiced by the filing of a notice to report instead of an answer on their behalf by the complainant Morris as their solicitor. It is not clear to me, however, that these parties have suffered from the fact that the complainant presumed to act for them as their solicitor. They were afforded every opportunity to prove their respective claims that they could have had if they had been represented by other counsel. They actually appeared before the master and presented proofs, and there is no suggestion that the master erred in his finding as to the amounts due them. While it was highly improper for the complainant to act as their solicitor, his action in so doing was apparently either authorized in the first instance by them or ratified thereafter, and they, therefore, have no cause for complaint on that account.
I feel that it would be inexcusable for me to close this memorandum without making some comment upon complainant's presumption in acting as solicitor for a number of the defendants. The complainant's personal interests were clearly antagonistic to those of the several defendants, and no solicitor of this court should ever engage to serve a client *Page 583 
whose interests conflict with his personal or other interest in the controversy. It is sought to justify the complainant's acting as solicitor for some of the defendants in this proceeding by distinguishing between the complainant's personal acts as complainant and those which he performed as the solicitor of the defendants and as an officer of this court. While equity has a keen and discerning eye enabling it to penetrate the shadow and see the substance, this distinction is too fine and subtle for me to either see or appreciate. The complainant's judgment as solicitor of some of the defendants was necessarily warped and influenced by his personal interest as complainant. The present situation in this foreclosure proceeding could not have arisen if all parties defendant had been represented by independent counsel. Whether or not this situation is the result of design, ignorance or gross negligence is immaterial in so far as it may affect the relief to be afforded to the infant defendants; but it is certain that this complication could not have arisen except as the result of one of these three. It is quite significant, however, that the final decree enlarged upon the rights of the complainant as determined by the master and that the fierifacias greatly enlarged upon the rights of the complainant and others as determined by the decree. Both the decree and thefieri facias were prepared in the office of the complainant by his secretary, who, in her affidavit, accepts full responsibility therefor, claiming it to have been the result of ignorance. This may be so, but it does not excuse the complainant's carelessness in permitting such important papers to be prepared in his office by one unskilled in the art of an equity draftsman. But whether or not the interests of those for whom the complainant acted as solicitor have been prejudiced in this proceeding, is entirely immaterial at this time; nor can these subsequent encumbrancer defendants take refuge behind their choice of complainant as their solicitor to the prejudice of innocent parties. If they have suffered injury through complainant's negligence or misconduct they have a complete and adequate remedy at law. I have already, on a previous occasion, condemned the practice *Page 584 
of solicitors of this court representing both complainants and defendants to a suit and to their acting for clients whose interests are antagonistic to their own. Ertag v CavalloConstruction Co., 104 N.J. Eq. 331. The practice pursued here is emphatically disapproved irrespective of its motive or whether or not it was the result of design, ignorance or negligence.
 ADDENDUM.
Since writing the foregoing conclusions my attention has been called to the fact that the petition of Long Branch Banking Company and Harry B. Sherman, Jr., contains the same allegations with respect to waiver and ratification by the petitioner Max Glaser as were contained in the petition of Citizens National Bank of Long Branch and John H. Davis, Jr. This was not my understanding at the time my conclusions were written and filed; but since this is so, the petition of Long Branch Banking Company and Harry B. Sherman will be retained for the same purpose that the petition of the Citizens National Bank of Long Branch and John H. Davis, Jr., is retained.
Nor was it intended by anything I said in those conclusions to preclude an adjudication of the rights of the defendants Sarah Glaser and Harry Glaser in the mortgaged premises by reason of the improvements thereon made at their expense, or by reason of payments by them on account of the second mortgage held by Long Branch Banking Company, or an adjudication of the rights, if any, of the petitioning creditors to subrogation to such rights of Sarah and Harry Glaser. I have held only that the several mortgages and judgments, other than the first and second mortgages, were not a lien upon the interests of the infant defendants. What the respective interests of the Glaser defendants in the mortgaged premises were must be determined upon the application for the distribution of moneys to be paid into court. I make this statement in order that there may be no misunderstanding in the preparation of the order which is to be now entered. *Page 585